99 Cal.Rptr.2d 570 (2000)
24 Cal.4th 219
6 P.3d 228
The PEOPLE, Plaintiff and Respondent,
v.
Jimmy Dale LAWRENCE, Defendant and Appellant.
No. S070271.
Supreme Court of California.
August 28, 2000.
As Modified on Denial of Rehearing October 3, 2000.
*571 William D. Farber, under appointment by the Supreme Court, for Defendant and Appellant.
*572 Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Carol Wendelin Pollack, Assistant Attorney General, James W. Bilderback II, Frederick Grab, Robert F. Katz, Sanjay T. Kumar, Michael C. Keller and Suzann E. Papagoda, Deputy Attorneys General, for Plaintiff and Respondent.
BAXTER, J.
When a defendant is sentenced under the three strikes law (Pen.Code, § 667, subds. (b)-(i))[1] because he has previously been convicted of one or more serious and/or violent felony offenses (§ 667, subds.(b), (c)), the three strikes provisions mandate that "[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to [this section]." (§ 667, subd. (c)(6); hereafter sometimes subdivision (c)(6).)[2] By implication, consecutive sentences are not mandated under subdivision (c)(6) (or subdivision (c)(7)) (see fn. 2, ante) if all of the current felony convictions are either "committed on the same occasion" or "aris[e] from the same set of operative facts." (Deloza, supra, 18 Cal.4th at p. 591, 76 Cal.Rptr.2d 255, 957 P.2d 945; Hendrix, supra, 16 Cal.4th at p. 513, 66 Cal.Rptr.2d 431, 941 P.2d 64.)
In Deloza we construed the term "committed on the same occasion" in section 1170.12, subdivision (a)(6) (identical to the legislative version found in section 667, subdivision (c)(6)) (see fn. 1, ante) as "refer[ring] at least to a close temporal and spatial proximity between the acts underlying the current convictions." (Deloza, supra, 18 Cal.4th at pp. 595, 599, 76 Cal. Rptr.2d 255, 957 P.2d 945.) Because the defendant's crimes in Deloza were clearly "committed on the same occasion" (id. at p. 596, 76 Cal.Rptr.2d 255, 957 P.2d 945), consecutive sentencing was not mandated and hence we had no occasion to further construe the phrase "arising from the same set of operative facts" also found in section 1170.12, subdivision (a)(6).
In this case the Court of Appeal found that defendant's current felony offenses *573 were committed on the same occasion and arose from the same set of operative facts, thus permitting concurrent sentencing. We granted review to determine whether on these facts defendant's offenses were committed on the same occasion, and if not, whether they also did not "aris[e] from the same set of operative facts" (subd. (c)(6)) such that the Court of Appeal erred in concluding consecutive sentences were not mandated.

I. Facts and Procedural Background
On March 19, 1996, at approximately 9:00 to 9:30 p.m., Joaquin Criner, a clerk at the Stater Brothers market at 1555 South Garey Avenue in Pomona, saw defendant leaving the store through a closed checkstand with a large bottle of E & J brandy partially secreted under his jacket. Criner shouted the code word for shoplifting and he and the store's manager chased defendant through the parking lot. Defendant swerved towards Richard Williams, an elderly man walking past the market, and either "pushed" or "grabbed" him, knocking Williams to the sidewalk and scattering his personal effects. Defendant then ran across South Garey Avenue, through a gas station, and got away while Criner was assisting Williams to his feet.
Sometime after 9:00 p.m. on the evening in question, Vincent Rojas and his wife (then fiancee) Elizabeth LaVastida were finishing dinner when one of their children indicated a man was in their backyard. Their dog, which was kept unleashed within the enclosed yard, began barking and their security light came on. Their home is at 1455 South Gibbs in Pomona, one block east and approximately one block north of the Stater Brothers market. At that time there was a large empty lot, as well as commercial buildings and residences, between the two locations. Children and others were known to take a shortcut through the vacant lot and over the wall behind the Rojas/LaVastida house to get from the area of the market to the gated community in which they lived. LaVastida testified that to walk from their house to the market via the shortcut over the wall behind their house, and through the lot, took two or three minutes. The alternative route, following the streets the two- to three-block walk between the two locations, took five minutes. The Rojas's backyard was itself completely fenced in with a cinder block wall, wooden fence and gate.
Rojas entered his backyard and confronted defendant, who swung at Rojas with the brandy bottle, striking his elbow. Defendant attempted to flee, jumping over the backyard fence and breaking off the upper slats in the process. Rojas grabbed a shovel and, together with his dog, pursued defendant over the fence, chasing him down a long community driveway and finally tackling him to the ground on South Gibbs street. Meanwhile, LaVastida had called the police. She approached the two struggling men, holding a youth's Little League baseball bat, and attempted to assist Rojas, trying to protect him from defendant who was swinging the brandy bottle while being held from behind by Rojas. Defendant swung the bottle at LaVastida, hitting her in the head and causing her to become dazed, start to lose consciousness, and fall to the ground. The police arrived, arrested defendant, and brought Criner to the scene to see if he could identify the suspect. Criner testified approximately 15 or 20 minutes had elapsed from the time of the theft to the time he was brought to the scene of defendant's detention and made his positive identification.
Based on the foregoing evidence, defendant was convicted by a jury of felony petty theft with a prior conviction (§ 666), assault upon Rojas (§ 240 reduced to a misdemeanor on the trial court's own motion), felony assault with a deadly weapon (the bottle) or with force likely to produce great bodily injury upon LaVastida (§ 245, subd. (a)(1)), and misdemeanor battery upon Williams (§ 242). In a bifurcated proceeding, the jury found defendant had suffered prior felony convictions for the *574 unlawful taking or driving of a vehicle (1980), attempted robbery (1985), and three separate convictions of robbery (1985, 1987, 1988).
The trial court concluded that under the applicable three strikes law (§ 667, subds.(b)-(i)), it was required to sentence defendant consecutively on the two current felony counts. It sentenced defendant to an aggregate term of 66 years to life, including two consecutive 25-year-to-life terms for the felony petty theft with a prior and the aggravated assault convictions; three 5-year enhancements, one for each of his three prior serious felony convictions (§ 667, subd. (a)); and two consecutive six-month terms for the misdemeanor assault and battery convictions. The court struck all one-year enhancements for the prior prison terms. (§ 667.5, subd. (b).)
On appeal, defendant challenged only his sentence, contending among other things that the sentencing court erred in concluding consecutive sentences were mandatory under subdivision (c)(6) because his current offenses were assertedly "committed on the same occasion" and "[arose] from the same set of operative facts." The Court of Appeal agreed, vacating the sentence imposed by the trial court and remanding the case for resentencing. The People filed a petition for review, which was granted, and this court thereafter ordered the Court of Appeal to vacate its decision and reconsider the matter in light of Deloza, supra, 18 Cal.4th 585, 76 Cal. Rptr.2d 255, 957 P.2d 945. The Court of Appeal thereafter issued a new opinion in which defendant's sentence was again vacated and the matter remanded for resentencing. We granted the People's second petition for review to determine the proper application of the relevant statutory language of subdivision (c)(6) to the facts of this case.

II. Discussion

A. Same Occasion
In Deloza, supra, 18 Cal.4th 585, 76 Cal.Rptr.2d 255, 957 P.2d 945, the defendant entered a furniture store with an armed companion, who pointed a gun at a salesperson while the defendant took $1,200 from the cash register, $200 from the wallet of another salesperson, and the purse of a female customer who approached him, before the two fled. (Id. at p. 589, 76 Cal.Rptr.2d 255, 957 P.2d 945.) The defendant was convicted of four counts of second degree robbery. On those facts we held the offenses were committed on the same occasion within the meaning of section 1170.12, subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7); fn. 1, ante). (Deloza, supra, 18 Cal.4th at p. 594, 76 Cal.Rptr.2d 255, 957 P.2d 945.)
In reaching that conclusion, we rejected an argument that the analysis for determining whether section 1170.12, subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7)) requires consecutive sentencing is coextensive with the test for determining whether section 654 permits multiple punishment. (Deloza, supra, 18 Cal.4th at pp. 591-595, 76 Cal.Rptr.2d 255, 957 P.2d 945.) We explained that section 654 is irrelevant to the question of whether multiple current convictions are sentenced concurrently or consecutively under the three strikes law, because section 654 does not allow any multiple punishment, whether concurrent or consecutive, and the analyses performed under the two statutes are entirely separate. (18 Cal.4th at p. 594, 76 Cal.Rptr.2d 255, 957 P.2d 945.)[3] We also rejected an argument that "same occasion," *575 as used in the three strikes mandatory-consecutive-sentencing provision, is necessarily closely related to the definition of "separate occasion" found in section 667.6, subdivision (d) (providing for full, separate, consecutive terms for certain sex offenses involving separate victims or the same victim on "separate occasions"), and that both phrases should therefore be construed as reflecting a common legislative intent. (Deloza, supra, 18 Cal.4th at pp. 596-599, 76 Cal. Rptr.2d 255, 957 P.2d 945.) We observed that because the term "separate occasions" appears in a variety of statutes, and does not appear to have a consistent meaning, "section 667.6, subdivision (d)'s definition of that term[ ] is of only marginal assistance under these circumstances in construing the meaning of the phrase `not committed on the same occasion.'" (Id. at p. 599, 76 Cal.Rptr.2d 255, 957 P.2d 945.)
Turning to the phrase "same occasion" found in section 1170.12, subdivision (a)(6) (see also § 667, subd. (c)(6)), we next explained in Deloza that "the legislative and initiative versions of the three strikes law are the only Penal Code sections that use the term `same occasion.' Nothing in either the language of subdivision (a)(6) and (7) or its legislative history suggests the electorate intended these words to have a special or peculiar import different from their ordinary, generally understood meaning. The phrase `committed on the same occasion' is commonly understood, to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well. Making mandatory consecutive sentences for those current crimes committed on different occasions is consistent with the focus of the three strikes law, which is recidivism. (Ballot Pamp., text of Prop. 184, Gen. Elec. (Nov. 8, 1994) p. 64 [The voters' stated intent in enacting section 1170.12 was `to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.']; § 667, subd. (b); People v. Neivsome [(1997)] 57 Cal.App.4th [902,] 913, 67 Cal.Rptr.2d 438.)" (Deloza, supra, 18 Cal.4th at pp. 594-595, 76 Cal.Rptr.2d 255, 957 P.2d 945, first italics added.)
Applying our construction of the phrase "committed on the same occasion" to the facts there before us, we explained in Deloza that "defendant entered a furniture store, robbed four victims, and left. His robberies were committed in one location, and were apparently brief in duration. They were committed essentially simultaneously against the same group of victims, i.e., persons in the furniture store. While [the patron whose purse was stolen] approached defendant, his criminal activity was not thereby interrupted, but merely continued with her as an additional victim. Nor was there any other event that could be considered to separate one `occasion' of robbery from another. Given the close temporal and spatial proximity of defendant's crimes against the same group of victims, they were clearly committed on the `same occasion,' regardless of what additional factors may be found relevant in defining the precise parameters of this phrase in future cases." (Deloza, supra, 18 Cal.4th at pp. 595-596, 76 Cal.Rptr.2d 255, 957 P.2d 945, fn. omitted.)
Because the defendant's crimes in Deloza were committed in one location, were brief in duration, and were committed essentially simultaneously against the same group of victims, we had no difficulty concluding they were "committed on the same occasion" within the meaning of section 1170.12, subdivision (a)(6) and (7) (see also § 667, subd. (c)(6) and (7)), and that consecutive sentencing was therefore not mandated. (Deloza, supra, 18 Cal.4th at p. 596, 76 Cal.Rptr.2d 255, 957 P.2d 945.) Accordingly, we had no occasion in Deloza to further construe the phrase "arising from the same set of operative facts" as used in the three strikes mandatory-consecutive-sentencing provision. (Id. at p. 596, fn. 7, 76 Cal.Rptr.2d 255, 957 P.2d 945.)
In this case, if defendant's current felony offenses of petty theft with a prior and *576 aggravated assault were "committed on the same occasion," then, as in Deloza, consecutive sentencing would not be mandatory under subdivision (c)(6), and we would need not further construe the language "arising from the same set of operative facts" also used in the statute. The Court of Appeal majority, with one justice dissenting, concluded that defendant's theft of a bottle of brandy from the market and subsequent assault on LaVastida were committed on the same occasion within the meaning of the statute. The majority opinion, citing Deloza, supra, 18 Cal.4th 585, 76 Cal.Rptr.2d 255, 957 P.2d 945, stated: "[Defendant's] offenses all were committed within a short span of time some five to 15 minutes, and within `close spatial proximity'in the market and the area immediately adjacent to it."
Like the dissenting justice below, we disagree with the Court of Appeal majority, and conclude instead that defendant did not commit the felony assault upon LaVastida on "the same occasion" (subd. (c)(6)) as the petty theft from the market. As noted, in Deloza, the four robberies occurred almost simultaneously. Similarly, in Hendrix, supra, 16 Cal.4th 508, 66 Cal.Rptr.2d 431, 941 P.2d 64, the defendant robbed or attempted to rob four victims seated at a table in a mall, demanded money at gunpoint, backed out of the room briefly, returned to warn them not to move, then left. We concluded on the facts of Hendrix that the crimes had been committed on the "same occasion," a point ultimately conceded by the parties in that case. (Id. at pp. 510-511, 66 Cal.Rptr.2d 431, 941 P.2d 64.)
Here, in contrast, defendant fled the scene of his first crime, the theft of a bottle of brandy from a market. He was seen running across the street and through a gas station. He likely followed the shortcut through the vacant lot, over the wall behind the Rojas/LaVastida house, and into their fully enclosed backyard. There was testimony it would have taken defendant two or three minutes to walk that distance, though he undoubtedly traveled the route at a quickened pace. The facts taken as a whole support an inference that defendant committed his second offense at the Rojas/LaVastida home, a one- to three-block distance from the site of his first crime (depending on whether he took the shortcut or followed the city streets), and most likely within two or three minutes of his theft from the market. Although he was fleeing from the first crime scene and may have been following a known neighborhood shortcut, he nonetheless chose to trespass into the Rojas/LaVastida house's fully enclosed backyard. At the point at which he entered the backyard, defendant was no longer being pursued by any store personnel (although we do not know whether he was aware of that). In theory, he could have fled along a public street or thoroughfare and possibly escaped apprehension. Instead, he chose to commit new and separate crimes during his flight. The instant case thus involves additional factors not present in Deloza and Hendrix: two separate locations (a market and a residence one to three blocks away), and two entirely separate groups of victims (the employees and a patron of the market, and Rojas and LaVastida, who had no connection to the first crime scene). Nor can it be said that defendant's crimes were committed simultaneously (cf. Deloza, supra, 18 Cal.4th 585, 76 Cal.Rptr.2d 255, 957 P.2d 945) or through the same criminal act directed against multiple victims (cf. Hendrix, supra, 16 Cal.4th 508, 66 Cal.Rptr.2d 431, 941 P.2d 64).
Contrary to the suggestion of the dissent, we do not believe the facts of this case warrant invoking the "escape rule" (dis. opn. of Kennard, J., post, 99 Cal. Rptr.2d at p. 585, 6 P.3d at pp. 241-242), as defendant did not act with an accomplice in perpetrating the theft from the market, nor did the crime result in a felony murder. Once again, we observed in Deloza that "[n]othing in either the language of [the three strikes law's mandatory *577 consecutive-sentencing provision] or its legislative history suggests the electorate intended these words [`same occasion'] to have a special or peculiar import different from their ordinary, generally understood meaning. The phrase `committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events...." (Deloza, supra, 18 Cal.4th at p. 594, 76 Cal.Rptr.2d 255, 957 P.2d 945.) If there is no ambiguity, the "usual and ordinary meaning" of the term "same occasion" used in subdivision (c)(6) must control. (People v. Loeun (1997) 17 Cal.4th 1, 9, 69 Cal.Rptr.2d 776, 947 P.2d 1313.) Applying the commonly understood meaning of that term to these facts, we find that the theft from the market, and the aggravated assaults subsequently committed at the Rojas/LaVastida home, were not committed on the same occasion within the meaning of subdivision (c)(6). Even if the test were whether the defendant had "a reasonable opportunity for calm reflection" between commission of the two offenses (dis. opn. of Kennard, J., post, at p. 585, 6 P.3d at p. 241), the facts would still support an inference that after fleeing from the market, defendant did have sufficient opportunity to reflect upon the additional penal consequences of his decision to trespass into a fully enclosed private backyard, and thereafter assault the homeowners.
We do not believe it was intended that the mandatory consecutive-sentencing provision of the three strikes law not apply to the commission of different crimes perpetrated against different groups of victims merely because the later crimes occurred while the defendant was still in flight from the initial crime scene. No principle of criminal law shields a defendant from conviction of all such offenses, nor does section 654 prohibit multiple punishment for crimes of violence against multiple victims. (People v. King (1993) 5 Cal.4th 59, 78, 19 Cal.Rptr.2d 233, 851 P.2d 27.) We find no basis for concluding the voters who enacted the initiative version of the three strikes law (or the drafters of the virtually identical legislative version) nonetheless intended that all offenses a defendant chooses to commit while still in flight from the first crime scene should be excluded from the scope of the mandatory consecutive-sentencing provision.
Applying the "close spatial and temporal proximity" test of Deloza, we conclude the aggravated assault upon LaVastida, perpetrated two to three minutes or more after the theft from the market, at a location one to three blocks away (depending upon the flight route taken), was "not committed on the same occasion" as the theft within the meaning of section 667, subdivision (c)(6). Accordingly, we must now reach the question whether these offenses did or did not "aris[e] from the same set of operative facts." (Ibid.)

B. Same Set of Operative Facts

Observing that Deloza provides no guidance as to the meaning of the phrase "same set of operative facts," the Court of Appeal majority below concluded these offenses did arise from the same set of operative facts. The court characterized the aggravated assault upon LaVastida as an "escape attempt which immediately followed" the theft from the market. The court went on to reason:
"The Oxford English Dictionary (2d ed. CD-ROM) provides the relevant definition of the word `set':
"`A number of things connected in temporal or spatial succession or by natural production or formation.'
"Similarly, Webster's Third New International Dictionary (1981) at page 2078 defines `set' as:
"`A number of things naturally connected by location or order in time.'
"These definitions show that `set' as used in the phrase `same set of operative facts' imports the same concepts of closeness in time and location as the phrase `same occasion,' and also adds an implication *578 of `natural connection' between the facts of several crimes.
"Thus the definitions of the words used in section 667, subdivision (c)(6) and (7), suggest that consecutive sentences are not required where the several current crimes occurred close together in space and time, and had some connection between them." (Italics added.)
We cannot agree with the Court of Appeal's construction of the term "same set of operative facts," nor with its conclusion that these offenses fell within the meaning of that phrase. In construing the relevant provisions of subdivision (c)(6), "as with any statute, we strive to ascertain and effectuate the Legislature's intent." (People v. Loeun, supra, 17 Cal.4th at p. 8, 69 Cal.Rptr.2d 776, 947 P.2d 1313.) Because statutory language generally provides the most reliable indicator of that intent (Hsu v. Abbara (1995) 9 Cal.4th 863, 871, 39 Cal.Rptr.2d 824, 891 P.2d 804), we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context. (People v. Loeun, supra, 17 Cal.4th at p. 9, 69 Cal. Rptr.2d 776, 947 P.2d 1313). "`If there is no ambiguity in the language of the statute, "... the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs."'" (Ibid.)
We do not disagree with the Court of Appeal's understanding of the plain and ordinary meaning of the words "same set" found in subdivision (c)(6). Given the definitions provided, we agree it appears reasonable to conclude those words import the same concepts of closeness in time and space as the phrase "same occasion" found in subdivision (c)(6). But the Court of Appeal failed to attach any significance whatsoever to the modifier "operative" which also appears in the phrase "same set of operative facts." The relevant definition of the term "operative" from Webster's Third New International Dictionary (1993) is "producing an appropriate or designed effect; exerting force or influence." (Id. at p. 1581.) Similarly, the Oxford English Dictionary (2d ed.1989) defines "operative" as "active in producing, or having the power to produce, effects; exerting force, energy, or influence." (Id. at p. 850.)
The ordinary and common definition of "operative"producing an appropriate or desired effect; exerting force or influenceis consistent with prior judicial constructions of that term finding it refers to the facts of a case which prove the underlying current charged offense. As the court in People v. Durant (1999) 68 Cal. App.4th 1393, 81 Cal.Rptr.2d 207 (Durant) explained: "the phrase `the same set of operative facts' has been judicially interpreted in collateral estoppel and election of remedies cases to refer to those facts which prove a criminal or civil defendant's liability for a particular wrongful act. (People v. Nunez (1986) 183 Cal.App.3d 214, 221, 228 Cal.Rptr. 64; General Ins. Co. v. Mammoth Vista Owners' Assn. (1985) 174 Cal.App.3d 810, 828, 220 Cal. Rptr. 291; People v. Superior Court (Jackson) (1975) 44 Cal.App.3d 494, 502, 118 Cal.Rptr. 702.) Generally, `[w]here the language of a statute uses terms that have been judicially construed, "`the presumption is almost irresistible'" that the terms have been used "`in the precise and technical sense which had been placed upon them by the courts.'" [Citations.] This principle applies to legislation adopted through the initiative process. [Citation.]' (People v. Weidert (1985) 39 Cal.3d 836, 845-846, 218 Cal.Rptr. 57, 705 P.2d 380.) While we have not found this exact phrase construed in other statutes, it has often been used by courts to refer to the facts of a case which prove the underlying act upon which a defendant had been found guilty. This meaning comports with the finding made by the court in People v. Martin (1995) 32 Cal.App.4th 656, 663-664, 38 Cal.Rptr.2d 776, disapproved on another point in People v. Deloza, supra, 18 Cal.4th at page 600, footnote 10, 76 Cal. Rptr.2d 255, 957 P.2d 945, that although `... the term "operative facts" has not always been used in precisely the same *579 way [citations], [the court] believe[d] that in section 667, subdivision (c)(6) [such term] relates to the facts underlying the current charged offenses.' (People v. Martin, supra, [32 Cal.App.4th] at pp. 663-664 [38 Cal.Rptr.2d 776].) We agree and thus believe that consistent with its common usage the enactors of sections 667, subdivisions (b) through (i) and 1170.12 used the phrase `the same set of operative facts' with such general meaning in mind." (Durant, supra, 68 Cal.App.4th at p. 1405, 81 Cal.Rptr.2d 207.)
In Durant, the defendant was convicted of burglary and two counts of attempted burglary, and the trial court imposed concurrent sentences for the three current convictions under the "same occasion/same operative facts" exception to the mandatory consecutive-sentencing requirement of the three strikes law. The Court of Appeal reversed and remanded for resentencing, finding the trial court had imposed an unlawful sentence because the three crimes did not come within the "same occasion/same operative facts" exception despite the fact that defendant had committed all the offenses at the same general location (a housing complex), against what arguably might be deemed the same group of victims (persons in the housing complex whom he burglarized or attempted to burglarize), and although the offenses occurred in succession without intervening events. The Durant court emphasized that the two attempted burglaries, by their nature and elements, were completed before defendant committed the completed burglary, and that the crimes did not occur on the "same occasion" as that term is commonly understood. Nor did the duration of the crimes overlap, each being distinct and completed when defendant attempted to enter or successfully entered a residence and then left to go burglarize another residence. (Durant, supra, 68 Cal.App.4th at pp. 1396-1400, 81 Cal. Rptr.2d 207.)
The Durant court, applying the above described definition of "same set of operative facts" to the facts before it, reasoned that "In applying this definition to any particular case, the nature and elements of the current charged offense becomes highly relevant. For example, when a robbery is charged, its continuous nature, its elements and the facts used to support those elements are the `operative facts' underlying the commission of that crime. If another offense is committed while the facts underlying that robbery are unfolding, it will necessarily arise from the same set of operative facts as the original robbery. However, where the elements of the original crime have been satisfied, any crime subsequently committed will not arise from the same set of operative facts underlying the completed crime; rather such crime is necessarily committed at a different time. For instance, with the crime of burglary, where the offense is complete when there is an entry into a structure with felonious intent, `regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed' (People v. Montoya (1994) 7 Cal.4th 1027, 1041-1042, 31 Cal. Rptr.2d 128, 874 P.2d 903), the commission after the first burglary of a crime or burglary of another structure necessarily will arise out of different operative facts than those underlying the original offense." (Durant, supra, 68 Cal.App.4th at pp. 1405-1406, 81 Cal.Rptr.2d 207.)
We find the rationale of Durant instructive on the meaning and probable intent behind use of the phrase "same set of operative facts" in section 667, subdivision (c)(6). We read the mandatory consecutive-sentencing provision of the three strikes law as follows: If there are two or more current felony convictions "not committed on the same occasion," i.e., not committed within close temporal and spacial proximity of one another, and "not arising from the same set of operative facts," i.e., not sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which *580 defendant stands convicted, then "the court shall sentence the defendant consecutively on each count" pursuant to subdivision (c)(6). Conversely, where a sentencing court determines that two or more current felony convictions were either "committed on the same occasion" or "aris[e] from the same set of operative facts" as we have construed those terms in Deloza and the instant case, consecutive sentencing is not required under the three strikes law, but is permissible in the trial court's sound discretion.
In concluding in Deloza that the four robberies of which the defendant was convicted were all committed on the "same occasion," we acknowledged that "additional factors may be found relevant in defining the precise parameters of this phrase in future cases." (Deloza, supra, 18 Cal.4th at p. 596, 76 Cal.Rptr.2d 255, 957 P.2d 945, fn. omitted.) Similar words of caution are in order respecting our interpretation of the phrase "same set of operative facts" herein. Durant suggests that the nature and elements of the current charged offensesfor example, the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense "completed" in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimesare additional factors the court must consider in determining whether multiple current crimes arose from the "same set of operative facts" when the offenses are committed more than seconds apart. (Durant, supra, 68 Cal.App.4th at p. 1406, 81 Cal.Rptr.2d 207.) There may be others.
Returning to the facts of this case, we cannot agree with the Court of Appeal majority that defendant's current offenses "[arose] from the same set of operative facts." Defendant's initial crime was the shoplifting theft of a bottle of brandy from a market. Although still in flight from the crime scene, he thereafter chose to commit new and different offenses: the trespass into the Rojas/LaVastida backyard, and the ensuing assaults against Rojas and LaVastida. The first crime involved an act of theft directed at one group of victims, the second involved assaultive conduct directed at an unrelated pair of victims. The two criminal episodes were separated spatially by at least one to three city blocks, and temporally by two to three or more minutes (from the time defendant stole the brandy from the market until the point he committed the aggravated assault upon LaVastida after having fled from the first crime scene, trespassed into the Rojas/LaVastida backyard, and fled again, chased by Rojas out of the yard and down a long driveway to the street, where he hit LaVastida with the bottle before being subdued).
On these facts we conclude that defendant's felony assault upon LaVastida did not arise out of the "same set of operative facts" as the theft from the market. Because defendant's multiple current felony convictions neither were committed on the same occasion within the meaning of Deloza nor arose from the same set of operative facts, the trial court correctly concluded it was mandated by subdivision (c)(6) to sentence consecutively.

III. CONCLUSION
The judgment of the Court of Appeal is reversed and the matter remanded to that court for further proceedings consistent with the views expressed herein.
GEORGE, C.J., CHIN, J., and BROWN, J., concur.
Concurring Opinion by MOSK, J.
I concur in the judgment.
Consecutive sentencing is mandatory under the "Three Strikes" law,[1] to the *581 exclusion of concurrent sentencing, when a perpetrator is convicted of multiple felonies that were "not committed on the same occasion" and did "not aris[e] from the same set of operative facts." (Pen.Code, §§ 667, subd. (c)(6), 1170.12, subd. (a)(6).)
By contrast, consecutive sentencing is permissive under the Three Strikes law, together with concurrent sentencing, when the perpetrator is convicted of multiple felonies that were "committed on the same occasion" or "[arose] from the same set of operative facts." (Pen.Code, §§ 667, subd. (c)(6), 1170.12, subd. (a)(6).)
Hence, what is material under the Three Strikes law's rule of mandatory or permissive consecutive sentencing is whether the perpetrator's multiple felonies were committed on the "same occasion" or arose from the "same set of operative facts." If either on the "same occasion" or from the "same set of operative facts," then he may, but need not, be sentenced consecutively. If neither on the "same occasion" nor from the "same set of operative facts," then he must be sentenced consecutively.
The question before us is, What is the meaning of the Three Strikes law's rule of mandatory or permissive consecutive sentencing? That it is difficult can hardly be doubted. If any proof is needed, it may be found in the efforts reflected in both the majority and dissenting opinions.
In attempting to give my own answer to the question of the meaning of the Three Strikes law's rule of mandatory or permissive consecutive sentencing, I start from two premises, one about law and the other about language.
The first premise is this: In making law, one acts for a purpose. (See, e.g., Fuller, Positivism and Fidelity to Law  A Reply to Professor Hart (1958) 71 Harv. L.Rev. 630, 661-669; see also Cabell v. Markham (2d Cir.1945) 148 F.2d 737, 739 (per Hand, J.) [stating that "statutes always have some purpose ... to accomplish"], affd. sub nom. Markham v. Cabell (1945) 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165; see generally Jhering, Der Zweck im Recht (4th ed.1904-1905).) Hence, any law is a means to an end. (See generally 1 Jhering, Der Zweck im Recht (4th ed.1904), translated sub nom. Law as a Means to an End (Husik transl.1913).)
The second premise is this: In using language, one employs text in a context and not in isolation, the narrower context comprising each and all of the words employed to constitute an expression, the broader context embracing the world at large in which these words are employed. (See generally United States v. Lennox Metal Manufacturing Co. (2d Cir.1955) 225 F.2d 302, 307-315 (opn. of Frank, J.); Fuller, Positivism and Fidelity to Law A Reply to Professor Hart, supra, 71 Harv. L.Rev. at pp. 661-669; cf. Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 672-673, 47 Cal.Rptr.2d 108, 905 P.2d 1248 (conc. opn. of Mosk, J.) [dealing with the use of language in a statute].) In themselves, words have no meaning; they are given it by their users. (United States v. Lennox Metal Manufacturing Co., supra, 225 F.2d at p. 313 (opn. of Frank, J.).) Therefore, to attempt to find a word's meaning by looking solely within a dictionary and not at all outside its pages is futile. (See Kopp v. Fair Pol. Practices Com., supra, 11 Cal.4th at p. 673, 47 Cal. Rptr.2d 108, 905 P.2d 1248 (conc. opn. of Mosk, J.); United States v. Lennox Metal Manufacturing Co., supra, 225 F.2d at pp. 310-311 (opn. of Frank, J.); see also Cabell v. Markham, supra, 148 F.2d at p. 739 (per Hand, J.) [stating that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary"].) One who makes such an attempt fools himself  or is intent on fooling others.
*582 From these two premises it follows that a law derives its meaning from its language in its context, in light of its purpose. Although a word in a law may be "plain," its meaning may be altogether otherwise. (See United States v. Monia (1943) 317 U.S. 424, 431, 63 S.Ct. 409, 87 L.Ed. 376 (dis. opn. of Frankfurter, J.) [stating that the "notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification"].) Certainly, meaning does not follow word, as it were, step by step, like the shadow of a man who walks toward a bright afternoon sun. To cite Professor Fuller's illustration, the word "sleep" in the law, "It shall be a misdemeanor ... to sleep in any railway station," is "plain" in and of itself. (Fuller, Positivism and Fidelity to Law  A Reply to Professor Hart, supra, 71 Harv. L.Rev. at p. 664.) But, as Professor Fuller himself demonstrates, the law's meaning is not. What of the "passenger" who is "waiting at 3 A.M. for a delayed train," is "sitting upright in an orderly fashion," but is "heard ... to be gently snoring"  does he "sleep" in violation of the law? (Ibid.) Or what of the "man" who has "brought a blanket and pillow to the station" and has "obviously settled himself down for the night," but has not yet "had a chance to go to sleep"  does he "sleep" in violation of the law? (Ibid.) Unable to give a ready answer to either of these questions, we might nevertheless insist almost spontaneously that the "disheveled tramp, spread out in an ungainly fashion on one of the benches of the station, keeping weary passengers on their feet and filling their ears with raucous and alcoholic snores," must surely "sleep" in violation of the law. (Ibid.) We might indeed be correct. If so, we could not credit the plainness of the word "sleep" in the law, but rather the soundness of our own unconscious assumptions about both the law's language in its context and also its underlying purpose.
Let us return to our theme.
In its context, the language of the Three Strikes law's rule of mandatory or permissive consecutive sentencing for a perpetrator convicted of multiple felonies suggests that the rule turns on whether the perpetrator was allowed a reasonable opportunity for choice in the interim  to continue his felonious course or to bring it to an end.
Among statutes, the phrase "same occasion" appears only in the Three Strikes law. It is not there defined. Of course, "occasion" may be found in many other places, with a general sense of "period of time." Similarly, "same occasion," with a general sense of "same period of time." Its opposites include "separate occasion." (Cf. Cal. Rules of Court, rule 426 [implementing Pen.Code, § 667.6, subd. (d)].) "Separate occasion" presents itself, perhaps most prominently, in a rule of full, separate, and consecutive sentencing laid down by statute for a perpetrator convicted of multiple felonies entailing "sexually assaultive behavior," as specified (Pen. Code, § 667.6, subd. (d))  a rule that obtained at the time of the enactment of the Three Strikes law and obtains still today. In this provision, "occasions" are effectively defined as "separate" if they allow the perpetrator convicted of multiple felonies within its coverage a reasonable opportunity for choice in the interim.[2] Here, an "occasion" may be understood to *583 be the "same" if it denies the perpetrator convicted of multiple felonies a like opportunity.
Among statutes, the phrase "same set of operative facts" also appears only in the Three Strikes Law. It too is not there defined. "Set of operative facts" is not found in many other places. But it is indeed found in judicial decisions dealing with the relation-back doctrine (e.g., Barrington v. A.H. Robins Co. (1985) 39 Cal.3d 146, 150, 216 Cal.Rptr. 405, 702 P.2d 563), the rule against nonduplicative pleading (e.g., Lutz v. De Laurentiis (1989) 211 Cal.App.3d 1317, 1324, 260 Cal. Rptr. 106), loosely referred to under the rubric of "election of remedies" (People v. Durant (1999) 68 Cal.App.4th 1393, 1405, 81 Cal.Rptr.2d 207), and the doctrine of collateral estoppel (People v. Superior Court (Jackson) (1975) 44 Cal.App.3d 494, 502, 118 Cal.Rptr. 702). In these decisions, a "set of operative facts" is effectively defined as the "same" for multiple causes of action or criminal charges if it comprises a single group of common facts. Here, a "set of operative facts" may likewise be understood to be the "same" for a perpetrator's multiple felonies if it comprises a single group of common facts. The commonality of such facts will apparently deny the perpetrator a reasonable opportunity for choice in the interim, inasmuch as it will apparently deny him any "interim" within which to choose.
The purpose of the Three Strikes law's rule of mandatory or permissive consecutive sentencing for a perpetrator convicted of multiple felonies also suggests that the rule turns on whether he was allowed a reasonable opportunity for choice in the interim.
The purpose of this rule is, manifestly, to treat otherwise similarly situated perpetrators convicted of multiple felonies dissimilarly  specifically, to treat the perpetrator who did not commit his felonies on the "same occasion" and whose felonies did not arise from the "same set of operative facts" more harshly than the perpetrator who did commit his felonies on the "same occasion" or whose felonies did arise from the "same set of operative facts," and to do so by denying the former but not the latter any possibility of concurrent sentencing.
The underlying assumption is that the perpetrator convicted of multiple felonies who did not commit his felonies on the "same occasion" and whose felonies did not arise from the "same set of operative facts" is more blameworthy than the perpetrator of multiple felonies who did commit his felonies on the "same occasion" or whose felonies did arise from the "same set of operative facts."
As a general matter, a perpetrator's blameworthiness is dependent on his conduct (including its consequences) and his mental state. (See, e.g., 1 LaFave & Scott, Substantive Criminal Law (1986) Characteristics of the Substantive Criminal Law, § 1.2, pp. 8-11.)
The greater blameworthiness of the perpetrator convicted of multiple felonies who did not commit his felonies on the "same occasion" and whose felonies did not arise from the "same set of operative facts" cannot be attributed to more blameworthy conduct. By definition, the particular conduct underlying his felonies is immaterial for present purposes.
Rather, the greater blameworthiness of the perpetrator convicted of multiple felonies who did not commit his felonies on the "same occasion" and whose felonies did not arise from the "same set of operative facts" must be attributed to a more blameworthy mental state. And such more blameworthy mental state must, apparently, be attributed to the fact that he was indeed allowed a reasonable opportunity for choice in the interim  and chose not to bring his felonious course to an end but rather to continue therein.
In light of the foregoing, I conclude that a perpetrator convicted of multiple felonies committed his felonies on the "same occasion" when, and only when, he committed them within a period of time that denied *584 him a reasonable opportunity for choice in the interim.[3] I likewise conclude that his felonies arose out of the "same set of operative facts" when, and only when, they arose out of a single group of common facts, whose commonality denied him a reasonable opportunity for choice in the interim by denying him any "interim" within which to choose.
Turning now to the case at bar, I am of the view that the facts relevant for our purposes are generally as stated in the majority opinion.
I believe that the facts establish that appellant did not commit his felonies on the "same occasion." On one, he engaged in petty theft against the Stater Brothers market, having previously suffered a theft-related conviction. On another, he assaulted Elizabeth LaVastida with a deadly weapon. It is true that he did the one and then the one close in time. But he had a reasonable, albeit not an extensive, opportunity for choice in the interim.
I also believe that the facts establish that appellant's felonies did not arise from the "same set of operative facts." It is not the case that there was a single group of common facts for both the theft and the assault. Hence, it is not the case that there was a commonality of facts that denied him a reasonable opportunity for choice in the interim by denying him any "interim" within which to choose. Rather, as stated, he did indeed have the requisite reasonable, if not extensive, opportunity.
In conclusion, having made the determinations indicated above, which are contrary to those of the Court of Appeal, I join the majority in reversing its judgment.
Dissenting Opinion by KENNARD, J.
I dissent.
Under the "Three Strikes" law (Pen. Code, §§ 667, subds.(b)-(i) [legislative version], 1170.12 [initiative version]), defendant was sentenced to prison terms of 25 years to life for each of two current felony convictions: petty theft with a prior theft or theft-related conviction (id., § 666) and assault with a deadly weapon (id., § 245, subd. (a)(1)). Defendant committed these offenses by stealing a bottle of brandy from a market and then, while fleeing from the market, using the same bottle to assault the occupant of a home nearby as he attempted to traverse the victim's yard. The majority holds that under the Three Strikes law the two prison terms must run consecutively, yielding an effective or aggregate term of 50 years to life, because the two offenses were not "committed on the same occasion" and did not arise "from the same set of operative facts" within the meaning of a provision of that law (id., §§ 667, subd. (c)(6) [legislative version], 1170.12, subd. (a)(6) [initiative version]).
Because the two offenses occurred at different places and were committed against different victims, I agree that the two offenses did not arise from the same operative facts. But I do not agree that the offenses were not "committed on the same occasion." The assault occurred within minutes of the theft and a short distance away, and defendant was still in flight after the theft, and had not reached a place of temporary safety, when he committed the assault.
As this court has said, "`committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well." (People v. Deloza (1998) 18 Cal.4th 585, 594, 76 Cal.Rptr.2d 255, 957 P.2d 945.) But how close is close enough, and what other factors are relevant?
*585 To answer these questions, it is helpful to consider other provisions of law concerning consecutive and concurrent sentencing because "we do not construe statutes in isolation, but rather read every statute `with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" (People v. Pieters (1991) 52 Cal.3d 894, 899, 276 Cal.Rptr. 918, 802 P.2d 420.)
One such provision is rule 425 of the California Rules of Court, which sets forth criteria affecting the decision to impose concurrent or consecutive sentences, including whether "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 425(a)(3).) From this provision I infer that at least one purpose of examining the proximity of offenses in place and in time is to assess whether they could reasonably be characterized as parts of a single episode of "aberrant behavior." A defendant who has committed offenses widely separated in space and time is considered more culpable than a defendant who committed the same offenses as a part of a single episode of aberrant behavior.
Another relevant provision of law is subdivision (d) of Penal Code section 667.6, which mandates consecutive sentences for certain sex crimes "if the crimes involve separate victims or involve the same victim on separate occasions." It further explains that "[i]n determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior." (Ibid.) Although I do not suggest that "not ... on the same occasion" under the Three Strikes law (Pen.Code, §§ 667, subd. (c)(6), 1170.12, subd. (a)(6)) has the exact meaning of "on separate occasions" under Penal Code section 667.6, subdivision (d), nevertheless, because of the two provisions' similarity of language and purpose, it is reasonable to infer that a defendant's opportunity for reflection is a relevant factor in deciding whether offenses occurred on the "same occasion" under the Three Strikes law. Again, a defendant who chooses to continue criminal behavior after calm reflection, or a reasonable opportunity for calm reflection, is regarded as more culpable than a defendant who commits the same offenses as part of a single episode that affords no reasonable opportunity for such reflection.
Finally, the "escape rule" is also relevant. With one minor variation, that rule provides that a robbery or similar theft-related offense continues for purposes of accomplice liability and the felony-murder rule while the robber or thief is fleeing and until he or she reaches a place of temporary safety. (See People v. Cooper (1991) 53 Cal.3d 1158, 1166-1170, 282 Cal.Rptr. 450, 811 P.2d 742 [for accomplice liability, but not for felony-murder liability, carrying away the loot is also required]; People v. Salas (1972) 7 Cal.3d 812, 823, 103 Cal. Rptr. 431, 500 P.2d 7.) It is more than a little odd to conclude that a theft or robbery was not finished and was still in progress for purposes of accomplice liability and the felony-murder rule when a later offense was committed, and yet that the two offenses did not occur on the "same occasion" for purposes of sentencing under the Three Strikes law. To harmonize the entire scheme of criminal law, the sentencing provisions of the Three Strikes law should be viewed in the context of the escape rule.
Here, the offenses of theft and aggravated assault occurred in close temporal and spatial proximity. The majority concedes that the time interval was, at most, two to three minutes, and the distance at most one to three blocks. (Maj. opn., ante, 99 Cal.Rptr.2d at p. 576, 6 P.3d at p. 233.) The majority also concedes that defendant *586 was fleeing from the first crime scene with the stolen property when he committed the second offense. (Ibid.) Nonetheless, the majority concludes that the offenses occurred on separate occasions because they were not committed simultaneously and because they were committed at separate locations and against separate victims. (Id. at p. 576, 6 P.3d at p. 234.) I disagree. The two incidents were sufficiently close in time and place to indicate a single period of aberrant behavior. Moreover, because defendant was in flight from the theft, and because the assault was an unplanned reaction to the victim's attempt to apprehend him, defendant did not have a meaningful opportunity to reflect before commission of the aggravated assault. I therefore conclude that the offenses occurred on the "same occasion" within the meaning of the Three Strikes law, and that the sentencing court had discretion to run the prison terms for these offenses either consecutively or concurrently.
In the exercise of its discretion, of course, the sentencing court might well decide to run the terms consecutively, and nothing in the appellate record suggests that the court would abuse its discretion in doing so. But the court could also decide to run the terms concurrently. Here, the court did not exercise its discretion because it concluded, erroneously in my view, that the Three Strikes law mandated consecutive terms. Therefore, I would direct the Court of Appeal to remand this case to the superior court for resentencing so that the trial court, guided by the criteria set forth in the California Rules of Court, could exercise its discretion to decide whether defendant should serve the two prison terms consecutively or concurrently. Under the law, the decision is one committed to the sentencing court's discretion, guided; it is not a decision for a reviewing court to make as a matter of law.
It is hardly surprising that the members of this court disagree on whether defendant's crimes occurred on the "same occasion." This court has said that it is "very difficult, if not impossible, to consistently implement" a rule that depends on whether crimes were committed on the same occasion. (People v. King (1993) 5 Cal.4th 59, 77, 19 Cal.Rptr.2d 233, 851 P.2d 27.) This court quoted with approval a Court of Appeal decision stating that determining "`what is an "occasion" ... has threatened judicial sanity....'" (Id. at p. 73, 19 Cal. Rptr.2d 233, 851 P.2d 27, quoting People v. Raby (1986) 179 Cal.App.3d 577, 585, 224 Cal.Rptr. 576.) To ensure more consistent implementation of sentencing provisions, the Legislature, the drafters of initiative measures, and the electorate may wish to reconsider provisions of the Penal Code that use this terminology.
WERDEGAR, J., concurs.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.

We have observed that "[t]he relevant portions of the initiative version of the three strikes law adopted by the voters in November 1994 (§ 1170.12), and the March 1994 legislative version (§ 667, subds.(b)-(i)), are virtually identical." (People v. Deloza (1998) 18 Cal.4th 585, 588-589 fn. 3, 76 Cal.Rptr.2d 255, 957 P.2d 945 (Deloza) Here, defendant's crimes were committed in 1996. The charging and sentencing documents in the record reference both the legislative and initiative versions of the applicable three strikes sentencing provisions. The Court of Appeal analyzed the issue herein with reference to the legislative version of the three strikes law, and the parties have done so as well in their briefs. For the sake of consistency and ease of reference we shall likewise refer to the legislative version, although the principles we discuss herein are equally applicable to cases arising under either version of the three strikes law.
[2] The identical mandatory-consecutive-sentencing rule applies where there are current convictions for more than one serious or violent felony (§ 667, subd. (c)(7)), although in such instances "when a defendant is convicted of two or more current serious or violent felonies `not committed on the same occasion, and not arising from the same set of operative facts,' not only must the court impose the sentences for these serious or violent offenses consecutive to each other, it must also impose these sentences `consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.'" (People v. Hendrix (1997) 16 Cal.4th 508, 513, 66 Cal. Rptr.2d 431, 941 P.2d 64 (Hendrix), italics added.)

As will be explained, here defendant was convicted of one current nonserious or violent felony (petty theft with a prior) and one current violent felony (assault with a deadly weapon; see § 1192.7, subd. (c)(23) [classifying any felony committed with personal use of a deadly weapon as a violent felony]). Accordingly, defendant's three strikes sentence was governed by section 667, subdivision (c)(6).
[3] We explained further in Deloza that there are certain crimes committed on the "same occasion" for which the three strikes law (§§ 1170.12, subd. (a)(6) and (7), 667, subd. (c)(6) and (7)) does not mandate consecutive sentencing, even though section 654 does not preclude multiple punishment. (Deloza, supra, 18 Cal.4th at p. 595, 76 Cal.Rptr.2d 255, 957 P.2d 945.) We gave as an example "committing a violent crime against multiple victims." (Ibid.)
[1] The Three Strikes law consists of each of two separate statutes. (People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 504, 53 Cal.Rptr.2d 789, 917 P.2d 628.) In their provisions generally, they are "nearly identical." (Ibid.) In the specific provisions with which we are here concerned, they are identical without qualification.
[2] Penal Code section 667.6, subdivision (d), provides in pertinent part: "A full, separate, and consecutive term shall be served for each" conviction of a felony entailing "sexually assaultive behavior," as specified, "if the crimes involve separate victims or involve the same victim on separate occasions, [¶] In determining whether crimes against a single victim were committed on separate occasions ..., the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions."
[3] Whether or not a perpetrator convicted of multiple felonies committed his felonies on the "same occasion" properly demands consideration of time rather than space. Space, however, may be involved as well as time. (See People v. Deloza (1998) 18 Cal.4th 585, 595, 76 Cal.Rptr.2d 255, 957 P.2d 945.) But only, apparently, as it relates thereto.