Filed 3/8/16  P. v. Bland CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA DAVIS BLAND,<br><br>Defendant and Appellant. | F069496<br><br>(Fresno Super. Ct. No. F12909340)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Gomes, Acting P.J., Poochigian, J. and Peña, J.

Defendant Joshua Davis Bland was convicted of one count of possession of child pornography and one count of possession of child pornography with a prior conviction, which required him to register as a sex offender. Numerous prior convictions were found true resulting in two consecutive sentences of 25 years to life.

Defendant's only argument is the trial court erred when it imposed consecutive sentences, instead of concurrent sentences. We find no error and affirm the judgment.

*The Information*

The consolidated information charged defendant with one count of possession of child pornography in violation of Penal Code section 311.11, subdivision (a),[1] and one count of possession of child pornography with a prior conviction for an offense that requires registration under the Sex Offender Registration Act in violation of section 311.11, subdivision (b). The information also alleged defendant had suffered seven prior convictions that constituted strikes within the meaning of section 667, subdivisions (b)−(i).

*The Testimony*

Six witnesses testified at trial, all police officers at Coalinga State Hospital.[2] On July 6, 2012, Officer Samuel Hall participated in a search of defendant's room at the hospital. Hall located a digital media player that can be connected to a television and which will then display images or music that had been stored on a memory card. Such devices are common in the hospital. There was a thumb drive in the digital media player that appeared to contain music files. Hall located a memory card underneath the portable player. These items were confiscated from defendant's room.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The issue in this case requires us to summarize only the testimony of five of the officers.

2.

Officer Michael Clark also participated in search of defendant's room on July 6, 2012. During that search Clark found a sheet of paper with a list of what appeared to be child pornography websites, although Clark did not view the websites to verify their content. Clark also found four compact disks. Each of the items were confiscated. Officer Juan Ibarra documented where confiscated items were located during the July 6, 2012, search of defendant's room, took photographs of those items, and booked the confiscated items into evidence.

Officer Lisandro Galvan conducted a search of defendant's room on November 19, 2012. He located a digital media player, some memory cards, two thumb drives, a hard drive, some compact disks, and an MP3 player. Galvan confiscated the items and booked them into evidence.

Sergeant Jerry Duvall instructed the officers to search defendant's room on July 6, 2012. He then interviewed defendant. The recording of the interview was played for the jury. He also searched the media storage devices confiscated from defendant's room. On the memory card he located approximately 765 images and 137 videos depicting child pornography. The other media storage devices contained pictures depicting children in erotic poses, but did not contain child pornography. After completing his review of the media storage devices, Duvall again interviewed defendant, this time on August 16, 2012. A recording of the interview was played for the jury.

After defendant's room was searched in November, Sergeant Duvall inspected the media storage devices confiscated from the room. One memory card had over 7,000 images depicting child pornography. Another memory card had over 5,000 images and over 400 videos depicting child pornography.

The final item of evidence introduced by the prosecutor was a certified record of defendant's prior conviction for violating section 288, subdivision (a).

*Closing Argument, Verdict and Sentencing*

The prosecutor argued the evidence established defendant's guilt. Defense counsel admitted the confiscated items contained child pornography, but argued there was insufficient evidence that defendant possessed those items since defendant had four roommates in the first room that was searched, and both the first and second rooms were easily accessible to any of the patients at the hospital.

The jury found defendant guilty as charged. In a bifurcated trial, the trial court found each of the enhancements true. The trial court denied defendant's invitation to strike his prior convictions pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and sentenced defendant to two consecutive third strike terms of 25 years to life.

## DISCUSSION

Defendant argues the trial court abused its discretion when it imposed consecutive sentences for the two convictions. Defendant bases his argument on section 667, subdivision (c)(6) (hereafter subdivision (c)(6)), which provides, "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." The Supreme Court has interpreted this provision to mean that consecutive sentences are not mandatory if the multiple felony convictions are committed on the same occasion or arise from the same set of operative facts. (*People v. Deloza* (1998) 18 Cal.4th 585, 591(*Deloza*).) Defendant argues his two convictions arose from the same set of operative facts, and thus the trial court was not obligated to impose consecutive sentences. We disagree.

*People v. Lawrence* (2000) 24 Cal.4th 219 (*Lawrence*) is instructive. Lawrence stole a bottle of brandy from a market and ran from the premises when confronted by store employees. He took a commonly used short cut to enter a gated community. This short cut required him to jump over a fence into the back yard of a private residence. He

4.

was confronted in the back yard by the homeowner (Rojas) and his fianceé (LaVastida). A struggle ensued, with Lawrence using the bottle of brandy as a weapon. At one point he struck the homeowner's fianceé in the head with the bottle, causing her to collapse and nearly rendering her unconscious. Lawrence was convicted of several crimes including, as relevant here, felony petty theft with a prior conviction, and felony assault with a deadly weapon or with force likely to produce great bodily injury. (*Id*. at p. 225.) Several prior convictions which constituted strikes were also found true. The trial court concluded it was obligated to impose consecutive three strike sentences on the two felony counts. (*Ibid*.)

The issue before the Supreme Court was whether the trial court had discretion to impose concurrent sentences pursuant to subdivision (c)(6). It began its analysis with *Deloza*, and confirmed that for the purposes of subdivision (c)(6), the phrase "committed on the same occasion" refers " ' "*to at least a close temporal and spatial proximity between two events, although it may involve other factors as well….*" ' " (*Lawrence*, *supra*, 24 Cal.4th 219 at p. 226, italics added in original.) It then explained *Deloza* concluded the crimes before it were committed on the same occasion within the meaning of the statute when Deloza entered a store, robbed four victims within that store, then left. " 'His robberies were committed in one location, and were apparently brief in duration. They were committed essentially simultaneously against the same group of victims, i.e., persons in the furniture store. While [the patron whose purse was stolen] approached defendant, his criminal activity was not thereby interrupted, but merely continued with her as an additional victim. Nor was there any other event that could be considered to separate one "occasion" of robbery from another. Given the close temporal and spatial proximity of defendant's crimes against the same group of victims, they were clearly committed on the "same occasion," regardless of what additional factors may be found relevant in defining the precise parameters of this phrase in future cases.' " (*Lawrence*, *supra*, at p. 227.)

Turning to Lawrence's crimes, the Supreme Court reached the opposite conclusion.

"Here, in contrast, defendant fled the scene of his first crime, the theft of a bottle of brandy from a market. He was seen running across the street and through a gas station. He likely followed the shortcut through the vacant lot, over the wall behind the Rojas/LaVastida house, and into their fully enclosed backyard. There was testimony it would have taken defendant two or three minutes to walk that distance, though he undoubtedly traveled the route at a quickened pace. The facts taken as a whole support an inference that defendant committed his second offense at the Rojas/LaVastida home, a one to three-block distance from the site of his first crime (depending on whether he took the shortcut or followed the city streets), and most likely within two or three minutes of his theft from the market. Although he was fleeing from the first crime scene and may have been following a known neighborhood shortcut, he nonetheless chose to trespass into the Rojas/LaVastida house's fully enclosed backyard. At the point at which he entered the backyard, defendant was no longer being pursued by any store personnel (although we do not know whether he was aware of that). In theory, he could have fled along a public street or thoroughfare and possibly escaped apprehension. Instead, he chose to commit *new* and *separate* crimes during his flight. The instant case thus involves additional factors not present in *Deloza* and [*People v. Hendrix* (1997) 16 Cal.4th 508]: two separate locations (a market and a residence one to three blocks away), and two entirely separate groups of victims (the employees and a patron of the market, and Rojas and LaVastida, who had no connection to the first crime). Nor can it be said that defendant's crimes were committed simultaneously (cf. *Deloza*, *supra*, 18 Cal.4th 585) or through the same criminal act directed against multiple victims (cf. *Hendrix*, *supra*, 16 Cal.4th 508)." (*Lawrence*, *supra*, 24 Cal.4th 219 at p. 228.)

The Supreme Court next considered the phrase "same set of operative facts" and concluded the phrase refers to two crimes that share common acts or common criminal conduct. (*Lawrence*, *supra*, 24 Cal.4th 219 at p. 233.) It then rejected Lawrence's claim that his two felony convictions arose from the same set of operative facts.

"Defendant's initial crime was the shoplifting theft of a bottle of brandy from a market. Although still in flight from the crime scene, he thereafter chose to commit new and different offenses: the trespass into the Rojas/LaVastida backyard, and the ensuing assaults against Rojas and

6.

LaVastida. The first crime involved an act of theft directed at one group of victims, the second involved assaultive conduct directed at an unrelated pair of victims. The two criminal episodes were separated spacially by at least one to three city blocks, and temporally by two to three or more minutes (from the time defendant stole the brandy from the market until the point he committed the aggravated assault upon LaVastida after having fled from the first crime scene, trespassed into the Rojas/LaVastida backyard, and fled again, chased by Rojas out of the yard and down a long driveway to the street, where he hit LaVastida with the bottle before being subdued).

"On these facts we conclude that defendant's felony assault upon LaVastida did not arise out of the 'same set of operative facts' as the theft from the market. Because defendant's multiple current felony convictions neither were committed on the same occasion within the meaning of *Deloza* nor arose from the same set of operative facts, the trial court correctly concluded it was mandated by subdivision (c)(6) to sentence consecutively." (*Id.* at pp. 233–234.)

The above quotes are from the lead opinion, which was signed by three justices. Justice Mosk wrote a concurring opinion which concluded the key to interpreting the above phrases was whether the perpetrator had a reasonable opportunity for choice when committing the two crimes. (*Lawrence*, *supra*, 24 Cal.4th 219 at pp. 237–238 (conc. opn. of Mosk, J.).) "I conclude that a perpetrator convicted of multiple felonies committed his felonies on the 'same occasion' when, and only when, he committed them within a period of time that denied him a reasonable opportunity for choice in the interim. I likewise conclude that his felonies arose out of the 'same set of operative facts' when, and only when, they arose out of a single group of common facts, whose commonality denied him a reasonable opportunity for choice in the interim by denying him any 'interim' within which to choose." (*Id*. at pp. 238–239.) Justice Mosk then concluded that mandatory consecutive sentences were required for Lawrence.

"I believe that the facts establish that appellant did *not* commit his felonies on the 'same occasion.' On one, he engaged in petty theft against the Stater Brothers market, having previously suffered a theft-related conviction. On another, he assaulted Elizabeth LaVastida with a deadly weapon. It is true that he did the one and then the other one close in time.

7.

But he had a reasonable, albeit not an extensive, opportunity for choice in the interim.

> "I also believe that the facts establish that appellant's felonies did *not* arise from the 'same set of operative facts.'   It is not the case that there was a single group of common facts for both the theft and the assault.   Hence, it is not the case that there was a commonality of facts that denied him a reasonable opportunity for choice in the interim by denying him any 'interim' within which to choose.   Rather, as stated, he did indeed have the requisite reasonable, if not extensive, opportunity." (*Id.* at p. 239.)

Regardless of the approach used, it is clear that defendant's crimes did not arise from the same set of operative facts.  The first crime occurred when defendant's room was searched on July 6, 2012.  The testimony suggests all media storage devices in defendant's room were confiscated at that time.[3]  Defendant was sometime thereafter moved to a different room.  When this room was searched four months later different media storage devices were located, giving rise to the second charge.  While each search resulted in essentially the same charge, the two charges were based on different media storage devices, found in searches conducted four months apart, and found in different rooms at Coalinga State Hospital.  In other words, the two crimes were separated by time and space, and did not have any common acts.  Under no reasonable construction can the phrase "same set of operative facts" include the facts of this case.  Although the two criminal acts were the same, possession of child pornography, the two charges related to separate and distinct conduct.   There was not a single group of common facts for both charges, and defendant had a reasonable opportunity for choice between obtaining the two sets of media storage devices.  Accordingly, we reject defendant's argument, and

---

[3] Although the question was not directly asked, the testimony established that the officers conducting the search were instructed to confiscate media storage devices, and since none were examined for possible pornography until later, the only reasonable inference is that all media storage devices were confiscated.  The testimony established, however, that the media storage devices containing child pornography found in the November search were not the same media storage devices containing child pornography found in the July search.

subdivision (c)(6) required the trial court to impose consecutive sentences for the two felony convictions.

The cases cited by defendant are inapposite. In *Wright v. Superior Court* (1997) 15 Cal.4th 521 (*Wright*), the defendant was charged with felony failure to register as a sex offender pursuant to section 290, subdivisions (a) and (f). The relevant facts indicated he originally had registered, but in November 1994, he moved and failed to report his new address. In March 1995, officials discovered the defendant had moved, and charges were brought. In 1994, failure to register as a sex offender was a misdemeanor, but effective January 1, 1995, the legislature reclassified the crime as a felony. The defendant was charged with a felony, but argued he should be charged with a misdemeanor because he violated the statute when he moved in November 1994. The issue was whether the failure to register as a sex offender was a continuing offense.

The portion of this opinion on which defendant relies is contained in the following quote. "Most crimes are instantaneous since they are committed as soon as every element is satisfied. Some crimes, however, are not terminated by a single act or circumstance but are committed as long as the proscribed conduct continues. Each day brings 'a renewal of the original crime or the repeated commission of new offenses.' [Citation.]" The distinction is critical because it determines the application of many legal principles such as the statute of limitations period, venue, jurisdiction, sentencing, double jeopardy, and, as here, the prohibition against ex post facto laws." (*Wright*, *supra*, 15 Cal.4th at p. 525.)

This quote does not assist defendant. It may be true that the media storage devices found in defendant's possession in July resulted in a continuing offense from the time he obtained them until they were confiscated. However, when those media storage devices were confiscated the crime ended. A second and distinct crime occurred because defendant possessed different media storage devices that contained child pornography. *Wright* is not implicated.

9.

Nor does *People v. Garcia* (2008) 167 Cal.App.4th 1550 assist defendant. Garcia was convicted of numerous crimes including robberies, carjacking, and vehicle related theft. In each of these crimes he used a firearm. He was also convicted of possession of a firearm by a felon. The issue was whether the possession of a firearm count arose out of the same set of operative facts within the meaning of subdivision (c)(6). The appellate court concluded it did because the firearm on which the possession charge was based was also used in the other crimes. Thus, according to the appellate court, "every other count shares common acts or criminal conduct – possession of what the trial court could reasonably find was the same firearm by the same previously arrested felon. As a result, the trial court possessed the discretion to impose a concurrent sentence." (*Id*. at p. 1567.)

Defendant was convicted of possessing child pornography on two separate occasions. The images were stored on different media storage devices. While some of the images found in the first search may have been the same or similar to images found in the second search, because there were thousands more images found in the second search there must have been images found in the second search which were not found in the first search. Therefore, to the extent defendant is arguing the crimes arose from the same set of operative fact because the images found in both searches were the same, we reject the argument.

## DISPOSITION

The judgment is affirmed.