[No. H024986. Sixth Dist. Nov. 19, 2003.]

In re ANGELIQUE C., a Person Coming Under the Juvenile Court Law.

SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Respondent, v.
WILLIAM C., Defendant and Appellant.

## COUNSEL

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Ann Miller Ravel, County Counsel, and Teri L. Robinson, Deputy County Counsel, for Plaintiff and Respondent.

George W. Kennedy, District Attorney and Robert J. Masterson, Deputy District Attorney, for Minor.

## OPINION

**ELIA, J.**—William C. appeals from an order denying him reunification services in dependency proceedings concerning Angelique C. The juvenile court relied exclusively on the reunification bypass provision in Welfare and Institutions Code section 361.5, subdivision (b)(11), which permits the court to bypass reunification services if a parent's relationship with a sibling of the minor has been permanently severed.[1] Appellant contends that this provision does not apply to a parent who has voluntarily relinquished parental rights to the sibling. He further contends that there was insufficient evidence to support the bypass findings, that the trial court applied the wrong burden of proof, that because the trial court continued the disposition hearing more than six months past the detention the court should have ordered reunification services, and that the court abused its discretion in not ordering services. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

In January 2002, the San Jose Police Department placed 16-month-old Angelique in protective custody. Her mother, Ms. J., "flagged down" the police and told them that she was mentally ill and did not know when she had

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

last taken her medication. She did not think she could care for Angelique. On January 23, 2002, the Santa Clara County Social Services Agency (Agency) filed a petition alleging that Angelique came within the provisions of Welfare and Institutions Code section 300 subdivisions (b) and (g). The petition alleged that both Ms. J. and appellant "have extensive mental health histories," that Ms. J. was currently hospitalized at Fremont Psychiatric Hospital, and that appellant's whereabouts were unknown. The petition stated, "there have been 2 substantiated cases of physical abuse of the child's brother, Ryan [R.], by his parents and their parental rights for Ryan were terminated on 09/22/00."

The court conducted a detention hearing on January 25, 2002, and ordered Angelique removed from her parents' custody and placed under the care and supervision of the Agency. The court ordered supervised visitation with Angelique for Ms. J. and appellant and unsupervised visitation for Angelique's maternal grandmother. In February 2002, the court found appellant to be Angelique's presumed father. Subsequent amendments to the petition alleged that Ms. J. was residing in a subacute psychiatric facility and appellant was incarcerated on a felony fugitive warrant from New Mexico.

The court held the jurisdictional hearing on March 12, 2002. The jurisdiction report described Angelique as "very beautiful," "well adjusted," and "very charming." The report stated that both Ms. J. and appellant had been in and out of psychiatric facilities many times. Appellant had attempted suicide in early January 2002. Appellant said "he ha[d] been diagnosed with Bipolar and should be taking Zoloft, Depakote and Lithium." When appellant met with the social worker, he "admitted to having a substance abuse problem and he asked [the social worker] for help."

The report stated that a social worker with Children's Services in New Mexico said that physical abuse allegations concerning Ryan had been substantiated concerning both Ms. J. and appellant and their parental rights had subsequently been terminated. Ms. J. told the social worker that she and appellant had "voluntarily relinquished" their rights to Ryan.

Both Ms. J. and appellant said they were willing to participate in programs to get Angelique back. The social worker was concerned "that the parents will not be able to complete services due to the instability of their mental health," appellant's impending incarceration in New Mexico on the felony fugitive warrant, and Ms. J.'s stay in the mental hospital on a voluntary hold for not taking her medications.

On March 12, 2002, the court found the allegations of the petition true, granted Angelique's counsel's request for two psychological evaluations for

both Ms. J. and appellant, and continued the matter for "receipt of eval[uations] [and] disposition." On June 18, 2002, the court corrected an oversight by declaring Angelique a dependent of the court. From March to July, the court continued the matter several times for receipt of the evaluations before conducting the disposition hearing. During this time, appellant called the social worker at least twice a week to see how Angelique was doing. He reported to the social worker that he had been on medications since his incarceration. Upon his release from custody in New Mexico, he would be required to stay in New Mexico for 18 months to complete his probation.

On July 23, 2002, the court began the contested disposition hearing, which was not completed until August 22. In the disposition report dated July 11, the social worker recommended that Ms. J. receive reunification services. Initially, the social worker recommended against services for appellant because he was on parole in New Mexico and "would not have consistent contact" with Angelique.[2] In an addendum dated July 23, the social worker stated that after submitting that recommendation, "the social worker was informed that the father was entitled to services." Counsel for the agency asked for reunification services for both Ms. J. and appellant.[3] The district attorney representing Angelique asked the court to bypass reunification services for both Ms. J. and appellant.

The disposition report described the results of the two psychiatric evaluations completed for Ms. J. and the one that had been completed for appellant. Dr. Carol Naumann found that appellant suffered from bipolar disorder—that is, recurrent major depressive episodes with hypomanic episodes—as well as alcohol dependence, alcohol abuse, alcohol withdrawal, cannabis abuse, a mood disorder and borderline personality disorder. She opined, "Mr. [C.] is unable at the present time to benefit from family reunification services and would best be served by pursuing long term intensive treatment for himself as well as treatment for his alcohol and drug abuse." Dr. Naumann said, "Mr. [C.] has a long history of serious emotional abuse without long term treatment or effective pharmacological intervention." She concluded, "it seems unlikely that Mr. [C.] could fulfill the responsibilities of direct care and support for . . . his child and further that reunification services if provided would not enable him to adequately care for and protect his child within the next twelve months."

---

[2] The social worker said that on July 15, she "restated the fact that the worker was not going to offer [appellant] services because of his distance from his daughter, which would not help him remain bonded with her. He stated that that was just fine."

[3] In this court, counsel for the minor has filed a respondent's brief and counsel for the agency has filed a letter brief stating, "During the trial on disposition, the Department recommended that the juvenile court provide reunification services to William C. Despite the fact that the court ruled against that recommendation, the Department does not believe that the court committed reversible error in doing so."

Ms. J. testified that she and appellant met when they were patients in the psychiatric unit of the same hospital. They had a son, Ryan, who was taken by child protective services in New Mexico when he was "six or nine months" old "because he had some burns on him from his father's cigarette ashes falling on him." She testified that she and appellant were referred for parenting classes, and appellant was referred for drug counseling. Ms. J. testified that they did not complete these programs, and that she and appellant "relinquished" their parental rights to Ryan by "sign[ing] the papers" to free him for adoption.

Social worker Elizabeth Woodard testified she spoke to a social worker in New Mexico concerning "Ryan's removal from his parents" and was told, "their parental rights were relinquished." When asked if she believed appellant should receive reunification services, she said, "No, I don't think he should receive them . . . . [¶] I just feel he's too far away. I'm sure he would probably attempt to do the services. And maybe would complete them, but in my assessment of him I feel that he is very immature and is a child himself. . . . He likes to play with his children, like, he's one of the children. So—and I haven't—with his past history of being in and out of jail I would be concerned." She acknowledged that appellant had called her "consistently at least three time a week" for the last six months. She said, "He wants to know how [Angelique]'s doing, you know. You know, how much she weighs. Tells me how much he loves her. I mean, he is very concerned about his daughter."

A social worker with the district attorney's office testified that he reviewed the psychological evaluations of Ms. J. and of appellant and recommended that services not be provided Ms. J. due to the "chronicity" of her mental health problems. He described his experience working in mental health facilities and observing a "pattern" of patients "being discharged with their medication being stabilized, but then for whatever reasons they decompensate and the medication regimen that was working so well in a few months does not."

The court received an addendum report that attached records from the Children, Youth and Families Department of New Mexico (department) regarding Angelique's brother Ryan. These records show the court granted the department custody of Ryan when he was observed by medical personnel to have unexplained burns on his hand and foot. On September 22, 2000, the court in New Mexico terminated appellant's and Ms. J.'s parental rights to Ryan.

Counsel for the agency argued that reunification services should be provided for both Ms. J. and appellant. As to appellant, counsel argued, "the burden of proof has not been met. And that he too has subsequently made

reasonable efforts to treat the problems that led to the removal of Ryan." Counsel for the agency pointed out that appellant had made reasonable efforts to treat the problems that had led to Ryan's removal by being in a dual diagnosis program; attending NA/AA meetings, group therapy, and monthly psychiatrist appointments; and working with a case manager. Counsel for Angelique argued that both Ms. J. and appellant should be bypassed for services. Counsel for appellant argued that the bypass provision of section 361.5, subdivision (b)(11) did not apply. Counsel argued, "the words in the statute of parental rights being permanently severed accompanied by references to the sibling's removal connote that an application of 361.5 (b)(11) should be reserved for parents whose rights to a sibling were involuntarily terminated. [¶] . . . It seems inequitable to punish father for a decision which this Court in other cases often refers to as a loving choice[.]" Counsel further argued that there was no evidence before the court that appellant had not made a reasonable effort to rectify the problems that led to Ryan's removal, and that services would also be in Angelique's best interest.

The court ordered that reunification services be provided to Ms. J., but not to appellant. Finding appellant's parental rights to Ryan had been terminated, the court said, "The Court must then decide whether or not he has made a reasonable effort to treat the problem that led to Ryan's removal from him. The Court is unconvinced that he has made reasonable efforts."

## DISCUSSION

### 1. *Section 361.5, Subdivision (b) (11)*

The court ordered reunification services for appellant bypassed under section 361.5, subdivision (b)(11) because appellant's parental rights to Angelique's sibling had been permanently severed. Appellant contends that the bypass of reunification services under this subdivision applies to involuntary terminations, not voluntary relinquishments of parental rights.

Section 361.5 provides in relevant part: "Except as provided in subdivision (b), or when the parent has voluntarily relinquished the child and the relinquishment has been filed with the State Department of Social Services, or upon the establishment of an order of guardianship pursuant to Section 360, whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." Subdivision (b) provides that reunification services need not be provided to a parent when the court finds, by clear and convincing evidence, any of certain enumerated exceptions. Subdivision (b)(11) describes the exception at issue here: "That the parental rights of a parent over any sibling

or half-sibling of the child had been permanently severed, and this parent is the same parent described in subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from the parent."

The evidence presented at the disposition hearing established that Ryan was the subject of a dependency petition in September 1999 and that in September 2000 the department in New Mexico filed an amended motion for the termination of appellant's and Ms. J.'s parental rights. During those proceedings, they informed the agency that they were willing to relinquish their parental rights and they filed a relinquishment and consent for adoption.

Appellant argues that "permanently severed," as used in subdivision (b)(11), means an involuntary termination of parental rights, and that this construction is supported by "the plain meaning of severed, the legislative history, and public policy." ▉ In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) We begin by examining the statutory language, giving the words their usual and ordinary meaning. (*Ibid.*; *People v. Lawrence* (2000) 24 Cal.4th 219, 230 [99 Cal.Rptr.2d 570, 6 P.3d 228].) If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272; *People v. Lawrence, supra,* 24 Cal.4th at pp. 230–231.)

Here, at issue is the meaning of the phrase "the parental rights . . . had been permanently severed" as used in section 361.5, subdivision (b)(11). To sever means "to put or keep apart: DIVIDE; especially: to remove (as a part) by or as if by cutting" and "to become separated." (Merriam-Webster Dictionary<http://www.m-w.com/cgi-bin/dictionary> [as of Nov. 17, 2003].) Appellant's parental rights to Angelique's sibling were permanently severed when, following appellant's voluntary relinquishment, the New Mexico court terminated his parental rights to Ryan. Thus, under the plain language of section 361.5, subdivision (b)(11), the court could order bypass reunification services to appellant.

In this state parental rights may be severed through the comprehensive dependency scheme of section 300 et seq. or under Family Code provisions for freedom from parental custody and control (Fam. Code, § 7800 et seq.) and for adoption (Fam. Code, § 8500 et seq.). ▉ Examining the language of section 361.5, subdivision (b)(11) and giving the words "permanently severed" their usual and ordinary meaning, we find the wording of

subdivision (b)(11) does not distinguish between a parent who has voluntarily relinquished the minor's sibling and a parent who, after a series of hearings in the dependency system, has had his or her parental rights to the minor's sibling terminated under section 366.26.[4]

Justice Kennard made this same observation in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735 [110 Cal.Rptr.2d 828, 28 P.3d 876]. Before October 10, 2001, the provisions of subdivision (b)(11) were found in subdivision (b)(10), which provided: "Reunification services need not be provided to a parent or guardian . . . when the court finds, by clear and convincing evidence, any of the following: . . . [¶] (10) That (A) the court ordered termination of reunification services for any siblings or half-siblings of the child because the parent or guardian failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a), or (B) the parental rights of a parent or guardian over any sibling or half-sibling of the child had been permanently severed, and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half-sibling of that child from that parent or guardian."

On August 16, 2001, the Supreme Court interpreted the no-reasonable-effort clause as applicable only to subpart (B) of section 361.5, subdivision (b)(10). The court said, "If we have failed to discern correctly the Legislature's intent in enacting the statute, that body may clarify the statute accordingly." (*Renee J. v. Superior Court, supra,* 26 Cal.4th at pp. 748–749, fn. omitted.) In her dissenting opinion, Justice Kennard said that the no-reasonable-effort clause should apply to subpart (A) as well as subpart (B). Justice Kennard observed, "Subpart (B) also *applies when parental rights are severed outside of the dependency system.* This occurs when a child has been abandoned or *voluntarily relinquished for adoption,* or when a third party brings an action to sever parental rights after the parent has been convicted of a felony or is seriously mentally ill. (Fam. Code, § 7800 et seq.)" (*Id.* at pp. 753–754, italics added.)

Shortly thereafter, in response to *Renee J.,* the Legislature amended the bypass provision by an urgency measure effective October 10, 2001. (Stats. 2001, ch. 653, § 11.3.) The amendment divided former subparts (A) and (B) of subdivision (b)(10) into separate provisions, subdivision (b)(10) for (A) and (b)(11) for (B), conforming the no-reasonable-effort provision to

---

[4] Contrast to Family Code section 8606, which describes distinct categories of parents from whom consent is not necessary for adoption of a child.

Justice Kennard's interpretation of the statute. In the new subdivision (b)(11), the phrase "permanently severed" remained.

 We hold that subdivision (b)(11) of Welfare and Institutions Code section 361.5 applies when a parent's rights to a minor's sibling or half sibling are severed due to a voluntary relinquishment of those rights. As appellant voluntarily relinquished his parental rights to Angelique's sibling, the trial court properly found appellant came within the bypass provision of that subdivision.

## 2. Sufficiency of the Evidence to Support Bypass Findings

Appellant contends there is insufficient evidence to support the trial court's finding that appellant had not adequately made a reasonable effort to treat the problems that led to the removal of Angelique's sibling. "On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576 [32 Cal.Rptr.2d 535].) Section 361.5, subdivision (b) requires bypass findings to be supported by clear and convincing evidence. " 'The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' [Citations.]" (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750 [106 Cal.Rptr. 187, 505 P.2d 1027].) Thus, on appeal from a judgment required to be based upon clear and convincing evidence, "the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 365, p. 415.)

Ms. J.'s testimony and Dr. Nauman's report establish that Ryan was removed from appellant's custody because of burns Ryan had suffered in appellant's care and that appellant was ordered to take parenting classes and receive drug education, neither of which he completed. Subsequent to Ryan's removal, which occurred during Angelique's infancy, appellant continued to struggle with mental illness, experienced multiple hospitalizations, had periods when he did not take his medication, continued to have substance abuse problems, and continued to violate the law. When Angelique became the subject of these dependency proceedings, appellant enrolled in a mental health program that deals with "dual diagnosis." Appellant reported he was attending three NA/AA meetings per week, seeing his therapist once per

week for group therapy, seeing a psychiatrist once a month for "medication consultation," and working with a case manager. Yet as late as July 2002, he was having lapses in his treatment regime. When the social worker asked him if he was continuing to take his medications, he said he had not taken them for a week. The evidence showed that for over a year after Ryan's removal, appellant continued to have the same multiple and serious problems that had led to the relinquishment and that the efforts he had made following Angelique's removal, prompted by his incarceration in New Mexico and these dependency proceedings, were, given the severity of his problems, inadequate. Substantial evidence supported the trial court's finding that appellant had not adequately made a reasonable effort to treat the problems that had led to the removal of Angelique's sibling.

Appellant contends that the documents from New Mexico concerning the dependency proceedings for Ryan and appellant's relinquishment of his parental rights were not properly authenticated. None of the documents were authenticated, and a portion of one document, presumably concerning Ryan's adoptive placement, was redacted. However, the court admitted into evidence a notarized letter that stated, "These are true and accurate copies from the New Mexico Children, Youth and Families Department-Protective Services Office records/files." In the trial court, counsel for Angelique argued the documents were admissible under Evidence Code sections 452 (judicial notice) and 1530 (copy of writing in official custody). Respondent argued the documents were also admissible under Welfare and Institutions Code sections 355 (social study at jurisdictional hearing) and 281 (reports of probation officer), as well as under California Rules of Court rules 1450 (social study hearsay at jurisdictional hearing) and 1455 (disposition reports). On appeal, respondent argues the documents were properly admitted under Evidence Code section 1280 (records prepared by public employees).

Although California Rules of Court, rule 1455, does not contain any special rules concerning the admission of documentary evidence from other states, it does require the court to receive into evidence the social study and any relevant evidence offered by the minor, which could include the New Mexico documents. But even if the New Mexico documents were not properly admitted, there was clear and convincing evidence offered other than that found in those documents that appellant had not made reasonable efforts to treat the problems that had led to the removal of Ryan. The social worker's testimony concerning appellant's criminal charges and his struggles with his mental health and the psychological report of Dr. Naumann support the trial court's decision to bypass services for appellant.

### 3. *Burden of Proof*

Appellant contends, "The court erred by stating the wrong burden of proof regarding reasonable efforts." The court told Ms. J. it was offering her reunification services because "it is you who sought help in January for your daughter. Despite the fact that you stopped taking your meds and were in a state where perhaps you weren't thinking particularly clearly, you thought enough to try to protect your daughter." The court went on to explain why it was denying services to appellant. The court said, "The Court is less impressed with [appellant's] efforts. The Court is less impressed with [appellant's] history. Aside from a well-documented mental health disability history, he's got quite a criminal history also. [¶] . . . It is clear that . . . his parental rights were terminated over another child, over Ryan. The court must then decide whether or not he has made a reasonable effort to treat the problem that led to Ryan's removal from him. The court is unconvinced that he has made reasonable efforts." The court said, "I'm not giving [appellant] a chance. His mental health history along with his criminal history and his lack of efforts to treat the problems that led to Ryan's removal are pretty clear to this Court."

Based on these remarks, appellant argues that the court "shift[ed] the burden of proof concerning reasonable efforts on [appellant], as opposed to the agency," and "the court did not find that [appellant] ha[d] not subsequently made a reasonable effort."

■ Although the party seeking bypass of reunification services under section 361.5, subdivision (b) has the burden of proving that reunification services need not be provided, the court is required under subdivision (b)(11) to consider what reasonable efforts the parent has made. This necessarily involves deciding "whether or not [appellant] has made a reasonable effort." We take the court's remarks to indicate a recognition that appellant did not overcome the evidence presented of his failure to make reasonable efforts, rather than a shifting of the burden of proof.

### 4. *Delay in Conducting Disposition Hearing*

The court ordered Angelique detained on January 25, 2002, and the disposition hearing was not completed until August 22, 2002. Appellant contends, "the bypass disposition order must be reversed because since the dispositional hearing was not held until over six months after Angelique's detention, it was not held within the time provided by section 352, subdivision (b)." Section 352, subdivision (b) states that "[i]n no event" shall the

court grant continuances that would cause the disposition hearing to be completed more than six months after the detention hearing.[5]

On March 12, 2002, the court found the allegations of the petition true, granted Angelique's counsel's request for two psychological evaluations for both Ms. J. and appellant, and continued the matter for "receipt of eval[uations] [and] disposition." On May 14, the agency requested and received a four-week continuance for receipt of the psychological evaluations. On June 13, the court received an addendum report that "[t]he evaluations have not been received by this Social Worker." On June 18, the court noted, "[t]his has dragged on for a little while, unfortunately." Finding good cause to continue the disposition hearing again, the court said there had been some "mix ups" in making the referrals for the psychological evaluations. In a July 11 addendum, the social worker said she had still not received the "two bypass psychological evaluations," and requested another four-week continuance. At this point, appellant had been interviewed by one psychologist while he was in custody in New Mexico, and, now out of custody, had an appointment for his second evaluation. Counsel for appellant expressed concern about meeting the timelines of section 352, subdivision (b) and requested a case plan for Ms. J. and appellant. Counsel suggested, "if bypass is appropriate later whoever would like that can file a [section] 388."

On July 18, the court noted that "a lot of time has pas[sed] and we have not yet had a disposition hearing. And the reason for that was that we were waiting for the psychological evaluations and we almost have them all back, not quite." The court considered various calendar conflicts among the attorneys and said "a lot of things are cooperating to put us in a place where it will be difficult to get this going[.]" The court set a number of dates over which the hearing could be held.

On July 23, 2002, the court began the contested disposition hearing, which was not completed until August 22.[6] On August 8, 2002, over the objection of appellant's trial counsel, the court continued the disposition hearing again. The court noted, "we have not completed disposition. And we are—we are

[5] Section 352, subdivision (b), provides: "Notwithstanding any other provision of law, if a minor has been removed from the parents' or guardians' custody, no continuance shall be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring such a continuance. The facts supporting such a continuance shall be entered upon the minutes of the court. *In no event shall the court grant continuances that would cause the hearing pursuant to Section 361 to be completed more than six months after the hearing pursuant to Section 319.*" (Italics added.)

[6] The court heard the matter July 23, July 24, August 8, August 13 and August 22, 2002.

past the six-month deadline." The court attributed the delays to "a systemic issue" in completing the psychological evaluations. The court observed that one of appellant's evaluations had been completed while he was in custody. The second one was to be performed in California but appellant's father had died in New Mexico and appellant had problems getting permission from his New Mexico probation officer to leave the area. The court noted that Ms. J. had been hospitalized on a psychiatric hold and was thus unable to attend the court proceedings. The court said, "it is not appropriate for the Court to go forward without her presence given there is new evidence that she needs to be made aware of and be able to answer to." The court continued the matter to August 13. On August 13, Ms. J. was still not present, her counsel waived her appearance, and the court proceeded, concluding the disposition hearing on August 22, 2002.

■ Appellant acknowledges *In re Richard H.* (1991) 234 Cal.App.3d 1351 [285 Cal.Rptr. 917], in which the court held that continuances of the adjudication and disposition hearings provide no basis for the dismissal of a section 300 petition. (*Id.* at p. 1361.) Appellant is not claiming that the juvenile court lacked jurisdiction but rather that "because the six month period had lapsed, under section 352, subdivision (b), the court lacked the power to bypass reunification services and erred in doing so." Even if the court erred, appellant cannot show prejudice. The delays here served to allow him more time to participate in his programs in order to try to defeat the evidence that he had not made reasonable efforts to treat the problems that had led to the removal of Angelique's sibling. We agree with appellant that "failing to complete a disposition hearing within six months in order to gather evidence to support [a bypass of reunification services] undermines the expedited policy underlying the bypass provisions." However, we disagree that the remedy for a violation of the time limits of section 352, subdivision (b) in this case would be to reverse the dispositional order as to him. Section 352 does not supply a penalty for noncompliance. Although the delays in this case were regrettable, and perhaps to some extent avoidable, the record fully supports the bypass of services. Because appellant cannot demonstrate prejudice resulting from the unauthorized delay, we decline his invitation to order the court to provide him with reunification services.

### 5. *Discretion Under Section 361.5, Subdivision (c)*

Appellant contends the court abused its discretion in not granting appellant reunification services. ■ The juvenile court has broad discretion in determining whether offering appellant reunification services would have been in Angelique's best interests. (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474 [73 Cal.Rptr.2d 793].) As a reviewing court, we will reverse a

juvenile court's order denying services only if that discretion has been clearly abused. (*Ibid.*) We see no such abuse of discretion here.

Subdivision (c) of section 361.5 provides in part: "The court shall not order reunification for a parent or guardian described in paragraph . . . (11) . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." Appellant argues various factors in support of his contention that reunification would be in Angelique's best interests, including the policy favoring reunification where that is still a valid prospect, and the "poor coordination of efforts that is caused by offering reunification services to only one of two parents." Our review of the record leads us to conclude that the court's exercise of its discretion here was sound.

## DISPOSITION

The order appealed from is affirmed.

Rushing, P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 3, 2004. Kennard, J., was of the opinion that the petition should be granted.