Filed 8/4/14

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH HOJNOWSKI,<br><br>        Defendant and Appellant. | A139455<br><br>(Del Norte County<br>Super. Ct. No. CRPB125152) |

After appellant Joseph Hojnowski was found competent to stand trial, a jury convicted him of three counts of aggravated battery by "gassing" under Penal Code section 4501.1,[1] which is statutorily defined as "intentionally placing or throwing, or causing to be placed or thrown, upon the person of another, any human excrement or other bodily fluids or bodily substances . . . that results in actual contact with the person's skin or membranes." (§ 4501.1, subd. (b).) In a bifurcated proceeding, the jury also found true allegations appellant had suffered a prior conviction under the Three Strikes law and had served a prior prison term. (§§ 667, subds. (b)-(i), 1170.12, 667.5, subd. (b).)

In this appeal from the judgment sentencing him to prison for an aggregate term of 11 years, appellant contends (1) the trial court should have declared a doubt as to his mental competency and suspended criminal proceedings before the trial began, even though he had previously been found competent; (2) the court's denial of his motion for

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III.A.–C.

[1] Further statutory references are to the Penal Code.

self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*) was an effective declaration of doubt as to his competence to stand trial; (3) the court should have held a hearing on his right to substitute counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); and (4) the case should be remanded for resentencing because the court erroneously believed it was required to impose consecutive sentences on all three counts. We affirm.

## I. FACTS

On April 1, 2012, appellant was serving a prison term in Pelican Bay State Prison and was housed in a lockup unit. Correctional Officers Rodgers and Serna escorted him to the showers and placed him in a stall with a steel mesh security screen. After appellant had finished showering, Rodgers handcuffed him while he was still in the shower stall before moving him back to his cell.

Rodgers asked appellant whether he had a cellmate, because security protocols required correctional officers to take certain precautions when another inmate was present. Appellant responded, "Well, go check the board yourself you dumb motherfucker," and spit at Rodgers through the security screen. Some of the spit hit Rodgers's face and made contact with Serna, who was standing close by.

Correctional Officer Rios heard a "scuffle" and walked into the shower area to see Rodgers "kind of pulled back from the shower door." Appellant, who was still in the shower, cursed at Rios and spit on his face. Correctional Officer Rosas approached appellant to place a "spit hood" on him and appellant spit on Rosas as well.

## II. PROCEDURAL HISTORY

A. <u>Criminal Complaint</u>

The Del Norte County District Attorney filed a felony complaint charging appellant with four counts of aggravated battery by gassing under section 4501.1. The complaint also alleged appellant had been previously convicted of two prior "strike" offenses—an attempted robbery committed in 2010 and an assault with a deadly weapon

2

committed in 2005—and had served a prior prison term (§§ 667, subds. (b)-(i), 1170.12, 667.5, subd. (b)).

B. Mental Competency Evaluation

On November 7, 2012, before the preliminary hearing was held, appellant's appointed counsel filed a written motion in which he declared a doubt as to his client's competence to stand trial and requested a suspension of criminal proceedings. (§§ 1367, 1368.) In his declaration supporting the motion, counsel stated, "My client refused to visit me today because he is irrationally holding onto the false notion that he is scheduled to be released from prison in the next week or so. Off[icer] Coleman has confirmed twice to me that his earliest possible release date with good behavior would be September 15, 2015. I told Defendant that when I saw him at the jail, but he ignores reality and persists in thinking that he can ignore the new charges pending in this case because he thinks he will be released in a few days despite facing 4 felony counts of aggravated gassing, a potential 3rd strike, and a prior prison term enhancement."

The court suspended criminal proceedings and appointed a prison psychologist, Edwin Jenesky, Ph.D., to examine appellant. Jenesky reviewed appellant's mental health records and conducted an interview on December 19, 2012. His report noted appellant received mental health services in prison "based on Rule Out diagnoses of Psychotic Disorder Not Otherwise Specified (NOS) as well as Schizophrenia, Paranoid Type." However, there were no current symptoms of either condition and appellant was taking no psychotropic medications. Jenesky found appellant to be "stable in presentation, coherent and cooperative with no symptoms or impairments due to a severe mental disease or defect. . . . Presently there are no signs or symptoms to support an active Axis I diagnosis. There remains the possibility of an underlying personality disorder. However neither a possible mental illness or personality disorder appears to influence present thinking capabilities or have any adverse effect other than when he becomes aggressive while angry or enraged."

3

Jenesky concluded appellant was able to understand the nature and purpose of the legal proceedings against him and could cooperate with his defense in a rational manner. On January 31, 2013, after counsel submitted on the report, the court found appellant to be mentally competent and reinstated criminal proceedings.

C. Plea Negotiations and Disagreement With Counsel

On February 7, 2013, the case was continued to accommodate ongoing plea negotiations, the district attorney having indicated a willingness to allow a plea to a lesser charge of battery on a correctional officer under section 243.1. When the parties appeared in court on March 7, 2013, defense counsel advised the court the district attorney had made a good offer in which appellant had been interested, but appellant had refused to see him when he went to discuss the matter. Counsel asked the court to set the case for a preliminary hearing, noting he had already declared a doubt as to appellant's competency and did not believe he was in a position to do so again.

Appellant advised the court he and counsel didn't work well together, and described why he believed the new offenses had been resolved and he was due to be released from prison.[2] He told the court he did not want to work with defense counsel,

_____

[2] "We don't work well together. I got the papers for disposition for this whole thing before I got the nonreferral papers if you check that memorandum, this ain't going to work out. We need to rectify two or three things. Once before I got in prison 2013 about three years back, set three years so don't be pronouncing no wrong date. [¶] So if you check that when you rectify that because we're having a problem at the court thing I get the prison also they even got that on the paperwork from the doctor you sent out. [¶] They want to get an audit to check for my release date so you can pronounce that it should be like 53 or to 54 days from today, which is the 7th of March or whatever, too, so that's not [a] problem and I got the disposition from this whole thing got a 150 days credit violation of—on whatever. [¶] I couldn't go to canteen or whatever for 150 days, and I got a nonreferral paper for these charges already, so when I went to video court the day I broke my leg on the way to court, this should all be resolved already was what was said in video court. [¶] If you're going to change the charge like he said last time to [a] different number, I want video court again to rectify it, because I can completely deny this whole thing. It's completely [a] misunderstanding. Got so much overtime because of it that everybody missed dinner for two or three hours. So it's a big thing is what the sergeant said."

4

describing him as a "schizoid dummy," and stated he would represent himself. The court set the case for a preliminary hearing and told appellant it would not be appointing another lawyer that day.

D. Preliminary Hearing

The preliminary hearing commenced on March 14, 2013, with appellant represented by his appointed defense counsel. During the cross-examination of Serna, who testified about appellant spitting at officers after his shower, appellant interjected, "Wait. There's like a cover on the shower. I'm not saying it wasn't me in the shower, but there's like a plastic glass in front of the shower." Disregarding his attorney's advice not to talk, he continued, "You're missing a major question. There's a big Plexiglas on the shower thing. So me spitting on the Plexiglas can't hit anybody over the door." Serna then testified the door did not have Plexiglas at the time. The court held appellant to answer on the charges and on March 15, 2013, the prosecution filed an information with the same charges and special allegations as the complaint.

E. Request for Self-Representation

The arraignment on the information was twice continued so appellant could present additional "data" about his release date from prison. On June 6, 2013, defense counsel asked the court to enter a not guilty plea and advised the court appellant had refused to see him, though "[h]e did speak to me the first time I went out there so I believe he understands the nature of the charges." Appellant told the court, "This dude ain't going to represent me. I'm in prison for three years, seven months. Sentence was three years. Okay?"[3]

The court asked appellant whether he wanted to represent himself and appellant said yes. Asked by the court whether he wanted to make a motion to have new counsel appointed, appellant responded, "That's unnecessary. That's the end of it. You can

---

[3] The records show that in 2010 appellant was convicted of two counts of attempted second degree robbery with a prior serious felony enhancement and was sentenced to prison for eight years, eight months. (§§ 664/211, 667, subd. (a).)

5

check his personal status, check my personal status. I'm not schizo. This dude—go back to your motherfucking problem you got." He continued, "This dude is not good enough to represent me, period. That's the end of it. That's the end of it. I don't want to hear about your dumbass pretending he's got teeth so move out, dude." When the court stated it was "concerned," appellant responded, "Not about me. Concerned in the conversation if you speak another language. This is master, not mister or some weird ass shit. You try speaking clearly. All right? I don't need your input." When the court suggested appointing other counsel, appellant replied, "No, that's not necessary, dude. I'm representing myself. That's how it's going to go." The court told appellant to file his motion for self-representation, but cautioned him, "[T]here is a good chance if you continue to act the way you are acting today, that I will deny the motion."

The motion for self-representation was heard on June 20, 2013. Appellant explained he was not cooperating with his appointed attorney and they were having trouble communicating about his release date. Counsel indicated appellant would not listen to him when he presented him with records showing a 2015 minimum release date for the prior attempted robbery offenses. Appellant advised the court he had "signed up" for 36 months, with additional time for the spitting violation.

In response to an inquiry by the court, the district attorney stated appellant's exposure in the current case was 15 years. Appellant disputed this: "I didn't do another. I didn't do 15 years so far. I didn't do 15. Say it right. If you can read 'deca' as the number that starts with 1 and zero after the word, don't say 15 like you got 5 and zero, and you're adding zero repeatedly. Say it properly, all right."

After appellant repeatedly interrupted the court's discussion with defense counsel regarding appellant's request to represent himself, the court asked appellant what he thought they were doing in court that day. Appellant responded, "I know what this is all about. This is about—this is, like, a phasing thing. I been to prison before. Same thing with the police, big ole charges, everybody is getting in trouble here or there. There is a margin of gap of error. People been in front of them for years in prison. Everybody complains about it when they get back to the homeowner's association or whatever.

[¶] Each person will have a problem. Somebody will get grilled or somebody is not going to, you know what I'm saying. So I understand the court process. But I don't want to be your motherfucking guinea pig or scapegoat. I'm not going to be. [¶] So I paid for my whole legal agenda . . . . It's going to be completed and needs to be honored the same way it was honored before I was incarcerated and turned myself in." Asked how he would represent himself on the charges, appellant replied it had all been resolved in "video court," including a "602" he had filed after he suffered a broken hip when being transported to the video court. He reiterated that his release date was less than 10 days away.[4]

The court asked defense counsel about his perception of the situation, and counsel responded, "It's very hard for me to diagnose what's going on here. [¶] I don't feel there's any reason I can't represent him, but he won't listen to me. He won't talk to me. And two-thirds of the time he won't come out of his cell to [see me]. And when he does come out, this is what happens." The court asked counsel whether he perceived any competency issues and counsel noted they had "done 1368." Appellant interjected he wanted his release date honored.

The court denied appellant's *Faretta* motion: "Well, look, obviously, if an individual can knowingly, intelligently waive their rights to a lawyer, and the Court concludes that they can, not have to even really do a competent job, just barely an adequate job with the resources they have, be able to defend themselves. And that's their right, and they take their chances. That's the way it is. [¶] But from what I heard, defendant doesn't even begin to have the ability to defend himself on his own. He can't—quite frankly, he can't even make sense here trying to basically discuss these

---

[4] Though cryptic, appellant's remarks are tethered in fact. Administrative appeals by inmates are filed on California Department of Corrections and Rehabilitation Form 602 (Rev. 08/09), Inmate/Parolee Appeal. (Cal. Code Regs., tit. 15, § 3084.1, subd. (b).) On October 4, 2012, appellant refused to appear for a video arraignment on the current charges. The section 1368 evaluation prepared by Jenesky notes that appellant suffered a fractured hip on October 18, 2012, and became belligerent when authorities tried to transport him to court from the prison hospital.

issues." It continued, "If the Court were to allow the defendant to represent himself, it would be a sham proceedings. It would be a folly." Defense counsel indicated he was ready for trial and defendant stated, "You ain't ready for shit, dude. You don't have anything to do with me. Get the faggot out of here. I don't want him talking for me. You don't got to talk for shit. Keep your stinkin' mouth shut. I don't want to hear about your two-whoring faggot or anything else you think you are."

F. <u>Trial and Sentencing</u>

At a readiness conference on June 27, 2013, appellant continued to claim he should be released and swore numerous times at the court. He referred to the "video court" and a "602" he filed, for which "a whole bunch [of] people got in trouble." When the court reminded him he was facing new charges, appellant insisted the judge was "appealing" him and holding him beyond his release date. He told the court he had won a "perusal," and told the court to shut its "schizo mouth" when it questioned him about the meaning of that word. Appellant urged the court to look at the "in-house thing" from the prison: "So calculate my time right there. Look at it. Look at the calendar. It's, like, two, three days, dude. What are you going to do about it? You don't got to charge one with a video court, period. You lost last year, period. [¶] . . . [¶] That's the end of it, period. If you got (inaudible) whole motherfuckin' squadron, that's your problem, dude, period. [¶] Don't expect anything from my motherfuckers, neither. Because military-wise, I'm thinking about (inaudible) looking trinity. If you are going schizo, I'm still bigger than you. [¶] You got a big ole motherfuckin' personality problem that makes Judge Levine (inaudible) Calhoun's problem or anybody who wants to finance you, you never (inaudible) employment status or any standard like that. So don't show up anywhere around me in society or around anybody I know, period."

On July 8, 2013, the first day of trial, appellant advised his attorney he did not want to participate in the trial or be present in the courtroom. After questioning appellant and ascertaining he did not wish to attend, the court ordered that he would not be brought to court against his wishes, but each day would be offered the opportunity to personally

8

attend.  He was also ordered placed in a holding cell with closed-circuit television to enable him to watch the proceedings.

The count of battery by gassing naming Serna as a victim was dismissed by the prosecution before trial.  After a one-day jury trial at which Rodgers, Rios and Rosas were called as witnesses, appellant was convicted of the three counts involving those correctional officers.  In a bifurcated proceeding, the jury found true a "strike" allegation based on the 2010 attempted robbery and a prior prison term allegation based on the 2004 conviction of assault with a deadly weapon.[5]

On August 5, 2013, the court held a sentencing hearing that appellant chose not to attend.  It sentenced him to prison for an aggregate term of 11 years, to be served consecutive to the prison term appellant was currently serving: six years on the Rodgers count (the three-year middle term, doubled under the Three Strikes law), consecutive terms of two years each on the Rios and Rosas counts (one-third the middle term, doubled under the Three Strikes law), and a consecutive one-year term for the prior prison term enhancement.

## III.  DISCUSSION

### A.  Competency to Stand Trial

Appellant argues the court should have suspended criminal proceedings because the comments he made during hearings held shortly before his trial show he was incompetent to stand trial.  We disagree.

Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a defendant who is mentally incompetent.  (*People v. Ary* (2011) 51 Cal.4th 510, 517-518 (*Ary*).)  A defendant is incompetent if he lacks " ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" ' " or " ' "a rational as well as factual understanding of the proceedings against him." ' [Citation.]"  (*Ibid.*; see *Dusky v.*

---

[5]  The information alleged two qualifying prior convictions under the Three Strikes law, but the prosecution submitted a verdict form on only one of them.

9

*United States* (1960) 362 U.S. 402.)  When the court is presented with substantial evidence raising a reasonable doubt as to the defendant's ability to stand trial, it must suspend criminal proceedings and conduct a full competency hearing.  (*Ary*, at pp. 517-518; *People v. Ramos* (2004) 34 Cal.4th 494, 507 (*Ramos*); see §§ 1367-1369.)  A defendant is presumed to be competent unless proved otherwise by a preponderance of the evidence (§ 1369, subd. (f)), and we review a court's decision as to whether to hold a competency hearing for abuse of discretion.  (*Ramos*, at p. 507.)

Criminal proceedings in this case were suspended in November 2012, before the preliminary hearing, when defense counsel declared a doubt regarding appellant's mental competence.  (See § 1368, subd. (b).)  A psychologist was appointed to evaluate appellant and, in January 2013, the court determined appellant to be mentally competent after reviewing the written report.  Appellant does not challenge that determination, but argues his exchanges with the court during the June 20, 2013, hearing on his *Faretta* motion and the June 27, 2013, readiness conference raised a reasonable doubt as to his competency.

When, as here, a defendant has been found competent to stand trial, "a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of [the competency] finding."  (*People v. Jones* (1991) 53 Cal.3d 1115, 1153 (*Jones*).)  To warrant a second competency hearing, "[m]ore is required than just bizarre actions or statements by the defendant."  (*People v. Marshall* (1997) 15 Cal.4th 1, 33; accord, *Ramos*, *supra*, 34 Cal.4th at p. 508; *People v. Marks* (2003) 31 Cal.4th 197, 220.)

The trial court did not abuse its discretion in failing to hold a second competency hearing because it was not " 'presented with a substantial change of circumstances or with new evidence' casting serious doubt on the validity of" the earlier finding of competency.  (*Jones*, *supra*, 53 Cal.3d at p. 1153.)  Defense counsel had previously expressed a doubt about appellant's competency because appellant was convinced he was about to be released from prison and rejected counsel's efforts to provide him with information to the contrary.  The psychologist who examined appellant found him

competent.  Appellant's subsequent exchanges with the court, though profane and bizarre, were reiterations of his professed belief in an imminent release date, the same belief that triggered the initial competency hearing.  (See *People v. Kelly* (1992) 1 Cal.4th 495, 543 [no second hearing required where "[t]he substance of the defense testimony relied upon on appeal was generally included in the facts defense counsel recited when they expressed their doubts as to competency in the first place"].)

Appellant's belief in an imminent release date, even if genuine and irrational, did not directly affect his ability to understand the current charges against him or to assist his counsel in defending against the same.  (*Ary*, *supra*, 51 Cal.4th at pp. 517-518.)  To the contrary, his comments at the preliminary hearing regarding the presence of a plastic shield on the shower shows he understood the elements of the charged offenses, which required proof his spit made contact with the correctional officers.

Appellant's hostile attitude and refusal to speak with his attorney did not demonstrate incompetency, because there was no substantial evidence his lack of cooperation stemmed from inability rather than unwillingness.  (*People v. Lewis* (2008) 43 Cal.4th 415, 526, disapproved on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919.)  Defense counsel advised the court proceedings had already been suspended under section 1368, but did not present any new information that would alter the earlier determination of competency.  (See *People v. Medina* (1995) 11 Cal.4th 694, 734 [defendant's "continued noncooperation did not, under the circumstances, constitute substantial evidence of a change in circumstances necessitating a new hearing"]; *Jones*, *supra*, 53 Cal.3d at p. 1153 [new hearing not required because counsel's representations that defendant could not assist in defense "did not cast serious doubt on the results of the earlier competency determination"].)  Indeed, defense counsel advised the court he believed appellant understood the nature of the pending charges.

B.  Effect of Order Denying Appellant's *Faretta* Motion

Appellant argues the trial court implicitly declared a doubt as to his competency to stand trial when it denied his *Faretta* motion for self-representation.  We disagree,

11

because "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." (*Indiana v. Edwards* (2008) 554 U.S. 164, 178; see *People v. Johnson* (2012) 53 Cal.4th 519, 523, 528 [California trial courts may deny requests for self-representation in cases where *Indiana v. Edwards* permits such denial].)  Because the standard of competence required for self-representation under *Faretta* is higher than the standard of competence to stand trial, the court's denial of appellant's *Faretta* motion did not necessarily mean he was incompetent to stand trial with the assistance of counsel.[6]

## C.  Failure to Hold a *Marsden* Hearing

Appellant contends reversal is required because the trial court failed to hold a hearing under *Marsden*, *supra,* 2 Cal.3d 118 in response to his pretrial complaints about his appointed counsel.  We disagree.

The duty to hold a hearing under *Marsden* arises when a defendant asserts appointed counsel is providing inadequate representation and seeks to have new counsel appointed.  (*Marsden*, *supra*, 2 Cal.3d at pp. 123-124; *People v. Memro* (1995) 11 Cal.4th 786, 857.)  A trial court is "unable to intelligently deal with a defendant's request for substitution of attorneys unless [it] is cognizant of the grounds which prompted the request."  (*Marsden*, at p. 123.) A court abuses its discretion when it denies a motion for substitute counsel without hearing the reasons for the motion.  (*Marsden*, at p. 124.)

When the parties in this case appeared in court on March 7, 2013 to set a date for the preliminary hearing, defense counsel advised the court appellant had refused to see him to discuss a plea offer.  Appellant indicated he and his attorney did not work well together and he did not want counsel to represent him due to a "conflict of interest." Appellant referred to counsel as a "schizoid dummy," but did not describe any instances of misconduct or incompetent misrepresentation by counsel. He said he would represent

---

[6] Appellant makes no claim the trial court erred in denying his *Faretta* request for self-representation.

12

himself, but later told the court, "Give me somebody else to represent me." The court responded that it would not appoint anyone else that day.

On June 6, 2013, counsel advised the court appellant had again refused to meet with him. Asked by the court why he did not want to talk to his attorney, appellant explained his defense counsel had not calculated his release date correctly. Appellant made a number of other comments about the calculation of the release date and said he wanted to represent himself. He told the court it was "unnecessary" to consider a motion for a new attorney because he was going to represent himself. At the June 20 hearing on the motion for self-representation, defendant again explained he and his attorney had problems communicating about his release date, which counsel confirmed.

Although no formal *Marsden* hearing was ever held, the proceedings satisfied the requirements of *Marsden*. Appellant spoke to the court several times about his dissatisfaction with trial counsel, but the only reason he ever articulated for wanting counsel removed from the case was the disagreement about appellant's release date. Defense counsel was not ineffective for attempting to advise appellant of his correct release date and a full-blown *Marsden* hearing was not required to resolve this issue. (See *People v. Freeman* (1994) 8 Cal.4th 450, 480-481 [court not required to hold a *Marsden* hearing when it considered handwritten letter submitted by the defendant and there was no reason to believe defendant withheld supporting facts or wished to state additional examples of inadequate representation]; *People v. Wharton* (1991) 53 Cal.3d 522, 580 [same].) The court had a sufficient understanding of appellant's reasons for requesting a new attorney and a sufficient basis for denying that request.

D. <u>Consecutive Sentences</u>

Appellant contends the case must be remanded for resentencing because the trial court erroneously believed consecutive terms were required for all three counts of battery by gassing. He argues that while the relevant statutes require the base term of a sentence for multiple in-prison offenses to be served consecutively with any prison term the defendant is currently serving, they do not necessitate consecutive terms for each count.

13

Appellant further argues concurrent terms were authorized because he was sentenced under the Three Strikes law. We disagree.

The elements of battery by gassing are defined in section 4501.1, which provides in part, "(a) . . . Every state prison inmate convicted of a felony under this section shall serve his or her term of imprisonment as prescribed in section 4501.5." Under section 4501.5, "Every person confined in a state prison of this state who commits a battery upon the person of any individual who is not himself a person confined therein shall be guilty of a felony and shall be imprisoned in the state prison for two, three, or four years, to be served consecutively."

Section 1170.1, subdivision (c) specifies that a consecutive term for an in-prison offense shall commence at the time the person would otherwise have been released from prison and further provides, "If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a)." Section 1170.1, subdivision (a) limits the sentence on a consecutive subordinate count to one-third the middle term unless otherwise provided.

The Three Strikes law requires that a defendant's determinate term be doubled when he or she has a single qualifying prior conviction. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).)[7] In the case of consecutive determinate terms, "the sentencing court must designate principal and subordinate terms as required by section 1170.1, calculating the subordinate terms as one-third of the middle term (except when full-term consecutive sentences are otherwise permitted or required), and then double each of the resulting terms." (*People v. Nguyen* (1999) 21 Cal.4th 197, 203-204.)

Appellant was convicted of three counts of battery by gassing against three separate victims: Rodgers, Rios and Rosas. At sentencing, the trial court designated the Rodgers count as the principal count and imposed a six-year term, consisting of the

---

[7] Though the information refers to both the legislative and initiative versions of the Three Strikes law, codified in sections 667 and 1170.12, appellant focuses primarily on section 667 in his briefs. We will do likewise for the sake of continuity, but our discussion is equally applicable to section 1170.12. (See *People v. Lawrence* (2000) 24 Cal.4th 219, 222, fn. 1 (*Lawrence*).)

three-year middle term doubled to six years under the Three Strikes law. Indicating that consecutive terms were required under section 4501.5, the court imposed consecutive terms of two years each on the remaining two counts, consisting of one year (one-third the middle term) doubled to two years under the Three Strikes law. With an additional year for the prior prison term enhancement under section 667.5, appellant's aggregate sentence was 11 years, to be served consecutively to the prison term he was already serving.

The trial court correctly determined it was required to impose consecutive terms on all three counts. As with many other statutes concerning in-prison offenses, section 4501.5 requires the imposition of consecutive sentences. Nothing in that provision distinguishes between single and multiple in-prison offenses or allows concurrent terms for multiple in-prison offenses, although consecutive sentences are subject to the one-third-the-middle-term limitation for subordinate counts established by section 1170.1, subdivisions (a) and (c). (See *People v. Mosely* (2007) 155 Cal.App.4th 313, 328 [§ 4502, mandating that terms for possession of certain weapons and devices in a penal institution "be served consecutively," required consecutive sentencing on multiple counts but did not permit imposition of full-strength terms]; *People v. Washington* (1994) 27 Cal.App.4th 940, 945 [defendant convicted of two violations of § 4501.5; second count should have been subject to one-third-the-middle-term requirement].)

Appellant suggests a different rule applies to his case because he was sentenced under the Three Strikes law, which supplants the mandatory consecutive sentencing provisions of section 4501.5. He relies on language contained in section 667, subdivision (c)(6): "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious and/or violent felony convictions . . . , the court shall adhere to each of the following: [¶] . . . [¶] (6) If there is a current conviction for more than one felony count *not* committed on the same occasion, and *not* arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to [this section]."

(Italics added.)[8]  Appellant reasons that because all three counts of battery by gassing were committed on the "same occasion" and arose from the same set of operative facts, concurrent sentences were not precluded by section 667, subdivision (c)(6) and could be imposed notwithstanding section 4501.5.

Section 667, subdivision (c)(6) does not give a trial court the discretion to impose concurrent terms when consecutive sentences would otherwise be mandatory.  It increases the punishment for certain recidivist offenders by making consecutive sentences mandatory in Three Strikes cases when the defendant was convicted of more than one offense *not* committed on the same occasion or arising out of the same operative facts.  Our Supreme Court has construed this language to mean " 'consecutive sentences are not mandatory [under the Three Strikes law] if the multiple current felony convictions are "committed on the same occasion" or "aris[e] from the same set of operative facts." ' "  (*People v. Deloza* (1998) 18 Cal.4th 585, 591 (*Deloza*); see *People v. Hendrix* (1997) 16 Cal.4th 508, 512-513 (*Hendrix*).)  But in those cases, a concurrent term was not otherwise barred by statute and the only basis for arguing a consecutive term was mandatory was the Three Strikes law itself.  (*Deloza*, *supra*, 18 Cal.4th at p. 589 [multiple robbery counts]; *Hendrix*, *supra,* 16 Cal.4th at p. 512 [robbery and attempted robbery counts].)  Section 667, subdivision (c)(6) does not permit concurrent sentences when a different provision of the Penal Code requires consecutive sentences.

Appellant argues we should disregard section 4501.5 because section 667, subdivision (c)(6) applies "[n]otwithstanding any other law," and the Supreme Court has construed that phrase to mean "[t]he Three Strikes law, when applicable, takes the place of whatever law would otherwise determine defendant's sentence for the current offense."  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 524 (*Romero*), discussing § 667, subd. (f)(1) ["Notwithstanding any other law, subdivisions (b) to (i),

---

[8] Offenses are committed on the "same occasion" when there is "at least a close temporal and spatial proximity between two events."  (*Lawrence*, *supra*, 24 Cal.4th at p. 229.)  "Operative facts" refers to "the facts of a case which prove the underlying act upon which a defendant had been found guilty."  (*Id*. at p. 231.)

16

inclusive, shall be applied in every case in which a defendant has one or more prior serious and/or violent felony convictions"].)  We are not persuaded.

Though the court in *Romero* referred to the Three Strikes law as "tak[ing] the place" of other sentencing statutes, it went on to note the "[n]otwithstanding any other law" language simply "eliminates potential conflicts between alternative sentencing schemes." (*Romero*, *supra*, 13 Cal.4th at p. 524.)  Thus, a defendant who has a qualifying prior conviction must be sentenced under the Three Strikes law, and in the case of a conflict, the Three Strikes law will control.  (*Ibid*.; *People v. Acosta* (2002) 29 Cal.4th 105, 132-133 [Three Strikes law applied notwithstanding defendant's eligibility for sentencing under One Strike provisions of section 667.61]; *People v. Franklin* (1997) 57 Cal.App.4th 68, 73-74 [in case of conflict, Three Strikes law governs].)  The mandatory consecutive sentencing provisions of section 4501.5 do not conflict with the Three Strikes law.

Moreover, the Three Strikes law expressly incorporates other sentencing statutes as part of its methodology for calculating a sentence under its provisions.  Section 667, subdivision (e) provides:  "For purposes of subdivisions (b) to (i), inclusive, *and in addition to any other enhancement or punishment provisions which may apply*, the following shall apply where a defendant has one or more prior serious and/or violent felony convictions:  [¶] (1) If a defendant has one prior serious and/or violent felony conviction as defined in subdivision (d) that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction." (Italics added.)  Section 4501.5, which requires consecutive sentences for battery by gassing under section 4501.1, is another "punishment provision[] which may apply" under section 667, subdivision (e).

The purpose of the Three Strikes law "is to provide greater punishment for recidivists." (*People v. Davis* (1997) 15 Cal.4th 1096, 1099; see § 667, subd. (b).)  It "uses a defendant's status as a recidivist to *separately* increase the punishment for *each* new felony conviction." (*People v. Williams* (2004) 34 Cal.4th 397, 404.)  Were we to

17

construe the Three Strikes law to supersede section 4501.5, a defendant convicted of multiple in-prison offenses who had suffered a qualifying prior conviction would be treated less harshly, with respect to consecutive sentences, than a defendant who had not suffered a qualifying prior conviction. In light of the underlying purpose of the Three Strikes law, we think it unlikely the Legislature intended that sentencing scheme to supplant otherwise applicable provisions rendering consecutive sentences mandatory.

The trial court did not abuse its discretion in failing to consider a concurrent term when a concurrent term was not authorized by law. Our resolution of this issue makes it unnecessary to consider appellant's alternative argument his trial counsel was ineffective in failing to seek the imposition of concurrent terms.

## IV.  DISPOSITION

The judgment is affirmed.

_____
NEEDHAM, J.

We concur.

_____
JONES, P. J.

_____
BRUINIERS, J.

18

Del Norte County Superior Court, No. CRPB125152, William H. Follett, Judge.

James S. Donnelly-Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Rene A. Chacon and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Respondent.