Filed 3/20/15  P. v. Gray CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

MORRIS PAT GRAY,

    Defendant and Appellant.

E060655

(Super.Ct.No. FBA1300181)

OPINION

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION[1]

After defendant Morris Pat Gray trapped his wife in a garage, he forced her to perform sexually and later threatened her. A jury convicted defendant on count 1 of a lesser offense of simple kidnapping (§ 207, subd. (a)); on count 2 of forcible oral copulation (§ 288a, subd. (c)(2)(A), and 667.61, subds. (a), (d)); on count 3 of misdemeanor false imprisonment (§ 236); and on count 4, dissuading a witness by force (§ 136.1, subds. (a), (b), & (c)(1).) Defendant admitted the prior conviction and prior prison term allegations. (§§ 667, subds. (a), (b)-(i); 667.5, subd. (b); 1170.12.) The court sentenced defendant to a total term of 75 years to life, consecutive to a determinate term of 11 years.

On appeal, defendant challenges his three Three Strikes convictions, contending his admission of the prior conviction and prior prison allegations was not voluntary and intelligent under the totality of the circumstances. In an effort to eliminate one of his life terms, defendant also challenges his sentence on the grounds that the trial court did not understand its discretion to impose concurrent terms and that section 654 barred dual punishment for kidnapping and oral copulation. We reject defendant's contentions and affirm the judgment.

---

[1] All statutory references are to the Penal Code unless stated otherwise.

FACTS

Defendant and his wife, L., were married for 25 years. She was the apartment manager for the building in which they lived. On March 12, 2013, at approximately 9:00 p.m., L., her son and daughter, J. and M., and her son C. and his girlfriend, Sabrina, were watching television in her bedroom. Defendant asked L. to come downstairs to the detached garage. Inside the garage, he locked the door so she could not leave.

Defendant first asked to receive "some love'n," which L. thought meant hugging and kissing. Instead, defendant insisted that L. perform oral sex on him. After hesitating, she finally complied but he complained she was not doing it right and he compelled her to watch a pornographic film for instruction. L. cried but she was afraid he would become angry and slap her. He told her, "We could go all night with this."

Meanwhile, J. asked Sabrina and C. not to leave before L. came back upstairs. Sabrina and M. went to the garage to check on L. and heard her crying. C. came downstairs and knocked on the garage door, saying he wanted to talk to L. Defendant yelled they were having sex. When C. insisted on speaking with her, L. answered in a "cracked voice." Defendant raised the garage door and L. came out. C. and defendant argued, and C. threatened to call the police before driving away with Sabrina. Later, after receiving a text from J., Sabrina called the police at the brothers' direction.

After returning to the apartment, defendant threatened to break L.'s nose with an aerosol can. A Barstow police officer responded at approximately 9:45 p.m. He observed L. had been crying. Defendant said he had a minor argument with his son who

had left. The officer interviewed L. separately. She told him she went downstairs with defendant because, in the past, if she refused, he would hit her and force her into sexual acts. She described being locked in the garage, being forced to perform oral sex and to watch the movie. She said, if her son had not knocked on the door, she would have been compelled to remain all night until she did it correctly.

At trial, L. described past instances of forcible sex. Generally, defendant forced her to engage in sex without her consent once a week and once a month he physically abused her. In 1998, after defendant was released from a mental facility, defendant threw her on the ground, performed oral sex on her, penetrated her rectum and vagina with his fingers, and penetrated her vagina with his fist. He acted strangely and believed that passing trains were giving him messages. He put a knife to her throat demanding to know who had raped her. In 2003, when defendant believed L. was cheating on him, he punched her in the stomach. She obtained a restraining order against defendant in 2007 but he refused to comply with the order.

J. testified that, often at night in his bedroom, he could hear his father making his mother engage in sex while she cried and tried to resist. M. observed her mother had unexplained bruises.

III

ADMISSION OF PRIOR CONVICTION AND PRISON TERM ALLEGATIONS

The information alleged the following three felony convictions and prison term allegations, as were sustained in San Bernardino Superior Court: 1) a 1976 conviction for murder, case No. 163735 (§§ 187; 667, subds. (a)(1) & (b)-(i); 1170.12, subds. (a)-

4

(d)); 2) a 1999 conviction for deadly assault, case No. FBA04531 (§§ 245, subd. (a)(1); 667, subds. (a)(1) & (b)-(i); 1170.12, subds. (a)-(d); and 3) a conviction for false imprisonment, case No. FBA700144 (§§ 236 and 667.5, subd. (b).)[2] After the jury verdict, based on defendant's admissions, the court found true the prison prior (the false imprisonment conviction) and two strike priors (the 1976 and 1999 convictions) and sentenced defendant to three life terms plus 11 years based on his admission of his prior conviction and prison term allegations.

The record shows the court fully advised defendant of his rights before obtaining his admissions. While the jury deliberated, the trial court asked defense counsel, Wilson, whether he had spoken with defendant about the bifurcated prior convictions. Defense counsel responded that defendant would waive his right to a jury trial. The court then advised defendant, "you understand that we have what were called 'Bifurcated issues.' There was a charge, I think, of prior convictions, and there's also prior prison terms served. Those are alleged in this case. And I don't know right now whether they are true or not true. But if you are convicted of any felony in this case, then those have to be determined. [¶] You have a right to have those issues determined by a jury, by this very jury. So if they come back with a jury verdict of guilty, we would go right into trial on the priors and the prior convictions." Defendant said he understood and had discussed the issue with his lawyer. The exchange continued:

---

[2] The record is unclear on whether the conviction was in 2007 or 2009.

"THE COURT:  You want to waive this right to have this jury make a determination as to whether those are true or false?

"THE DEFENDANT:  Yes.

"THE COURT:  Do you further wish to waive your right to have me determine them as a matter of the judge determining those and admit today that the allegations that have not been heard by the jury regarding your prior convictions and prison terms are true?

"THE DEFENDANT:  Yes, your Honor.

"THE COURT:  Do you join?

"MR. WILSON:  I do.

"THE COURT:  Do you agree that you sufficiently advised him, and in this is a knowing and intelligent waiver on your part?

"MR. WILSON:  Yes."

Before accepting a defendant's admission of a prior conviction, the trial court must advise the defendant and obtain waivers of the *Boykin-Tahl* rights:  the right to a trial to determine the fact of the prior conviction, the right to remain silent, and the right to confront adverse witnesses.  (*People v. Mosby* (2004) 33 Cal.4th 353, 356; *In re Yurko* (1974) 10 Cal.3d 857, 863; *Boykin v. Alabama* (1969) 395 U.S. 238, 242-243; *In re Tahl* (1969) 1 Cal.3d 122, 132.)  The record must affirmatively demonstrate that the admission of a prior conviction was voluntary and intelligent under the "totality of the circumstances."  (*Mosby,* at p. 360; *People v. Allen* (1999) 21 Cal.4th 424, 438; *People v. Howard* (1992) 1 Cal.4th 1132, 1178.)

6

In *Mosby*, after defense counsel informed the trial court that the defendant would admit a prior conviction, the court advised the defendant that he would be ineligible for probation and obtained his waiver of his right to a jury trial, but did not obtain his waiver of his rights to remain silent and to confront adverse witnesses. (*People v. Mosby, supra,* 33 Cal.4th at pp. 356-357.) The Supreme Court held that the totality of the circumstances supported the conclusion that Mosby's admission was voluntary, reasoning that a defendant who has just undergone a jury trial and has been advised of the right to a jury trial would know he would have the same rights at the trial on the prior conviction that he enjoyed at the trial on the substantive charges. (*Id.* at pp. 364-365.)

Defendant's admission in this case, like in *Mosby,* was obtained under circumstances that show he was aware of his associated constitutional rights to remain silent and to confront adverse witnesses. Because he had just undergone a jury trial in which he did not testify and in which the witnesses against him were cross-examined, he necessarily understood his constitutional rights. (*People v. Mosby, supra,* 33 Cal.4th at pp. 356-359, 364.)

Additionally, the record in this case demonstrated that defendant was well-versed in the criminal justice system. He was first convicted in 1976 at age 18 for second degree murder. Over the next 31 years, he sustained criminal convictions in at least seven more cases before the present offenses. We certainly may consider defendant's extensive experience with the criminal justice system in evaluating the validity of his waiver. (*People v. Mosby, supra,* 33 Cal.4th at p. 365.)

Furthermore, to the extent defendant claims his admission was not knowing and intelligent because he was not advised of the penal consequences of his admission, defendant forfeited the issue by not raising it before or during sentencing: "'A defendant who admits a prior criminal conviction must first be advised of the increased sentence that might be imposed. [Citations.] However, unlike the admonition required for a waiver of constitutional rights, advisement of the penal consequences of admitting a prior conviction is not constitutionally mandated. Rather, it is a judicially declared rule of criminal procedure. [Citations.] Consequently, when the only error is a failure to advise of the penal consequences, the error is waived if not raised at or before sentencing.' (*People v. Wrice* (1995) 38 Cal.App.4th 767, 770-771, 45 Cal.Rptr.2d 193.)" (*People v. Jones* (2009) 178 Cal.App.4th 853, 858.) Defendant has also failed to make any credible showing of prejudicial error. Even if defendant claims he would not have pleaded guilty if properly advised, nothing in the record supports this contention. (*People v. McClellan* (1993) 6 Cal.4th 367, 377-378.)

IV

SENTENCING

Defendant challenges his three consecutive life sentences, which he contends the court had the discretion to impose concurrently. He also urges that one of his two life sentences for kidnapping and for oral copulation should be stayed under section 654.

Our examination of the record does not find the court misunderstood the scope of its discretion to impose concurrent sentences. The court found counts 1, 2, and 4, were separate, meaning the Three Strikes law required consecutive sentences: "If there is a

8

current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." (§§ 667, subd. (c)(6); 1170.12, subd. (a)(6).) When a defendant is convicted of two or more current serious or violent felonies "not committed on the same occasion, and not arising from the same set of operative facts," the court must impose the sentences for these serious or violent offenses consecutive to each other and consecutive to any other sentence. (§§ 667, subd. (c)(6); 1170.12, subd. (a)(7); *People v. Hendrix* (1997) 16 Cal.4th 508, 512-513; *People v. Lawrence* (2000) 24 Cal.4th 219, 223.)

Defendant argues his convictions for kidnapping, oral copulation, and making a threat were eligible for concurrent sentences under the Three Strikes law. "The phrase 'committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well." (*People v. Deloza* (1998) 18 Cal.4th 585, 594.) The phrase "arising from the same set of operative facts" imports the same concepts of closeness in time and space as the phrase "same occasion" found in subdivision (c)(6), but also means "sharing common acts or criminal conduct that serves to establish the elements of the current felony offenses of which defendant stands convicted." (*People v. Lawrence, supra,* 24 Cal.4th at p. 233.)

In *People v. Deloza, supra*, 18 Cal.4th 585, the defendant entered a furniture store, robbed four victims in succession, and left. Because the robberies were committed in one location and simultaneously against the same group of victims, the court concluded that

9

they were "committed on the same occasion." (*Id.* at p. 596.) By contrast, in *People v. Lawrence, supra,* 24 Cal.4th at pages 233-234, where the defendant stole liquor from a market, knocked over a passerby as he left the store, fled to the backyard of a nearby residence, and then assaulted the residents when they attempted to detain him, the court concluded that the crimes were not committed on the same occasion and did not arise from the same set of operative facts because the defendant committed the crime against the residents after the first crime was complete, in a different location, and against a different set of victims. (*Id.* at p. 228.)

In this case, the record supports the trial court's finding that defendant's crimes were separate and were not committed on the same occasion, arising from the same set of operative facts. First, defendant committed the crime of kidnapping by confining L. in the garage. The jury rejected the charge on count 1 of kidnapping to commit oral copulation (§ 209, subd. (b)(1)) in favor of simple kidnapping. (§ 207, subd. (a).) The jury also found that defendant had committed the second "new and different" offense of forcible oral copulation after the simple kidnapping had been accomplished. (*People v. Lawrence, supra,* 24 Cal.4th at pp. 233-234.) Count 4, threatening a witness, the third Three Strikes offense, was obviously separate. Defendant threatened to break L.'s nose later in the evening, after they had left the garage and returned to the house. The trial court's finding that counts 1, 2, and 4 were separate under the Three Strikes law was not irrational, arbitrary, or unreasonable. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

We also reject defendant's argument that one of the two consecutive life sentences for kidnapping and oral copulation should have been stayed because they were part of an

10

indivisible transaction and incident to one objective under section 654. Section 654 states that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; *People v. Davis* (2005) 36 Cal.4th 510, 557.)

Whether a defendant entertained multiple criminal objectives is a question of fact and the trial court's express or implied findings on that question will be upheld if supported by substantial evidence: "Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence. [Citation.]" (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 271-272.)

Defendant asserts his objective and intent in moving L. to the garage was to force her to copulate him orally and there was no evidence of any separate motive or purpose.

11

Defendant also contends there was no temporal or spatial separation between the offenses of kidnapping and oral copulation. Defendant cites *People v. Latimer* (1993) 5 Cal.4th 1203, where the defendant drove the victim to the desert and raped her there, and the court held that section 654 barred punishment for both kidnapping and rape because "the evidence did not suggest any intent or objective behind the kidnapping other than to facilitate the rapes." (*Id.* at p. 1216.)

We conclude, however, substantial evidence supported the trial court's finding that defendant committed the offenses of kidnapping and forcible oral copulation with separate objectives and intents. If "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) As discussed, the jury convicted defendant of simple kidnapping, an offense which was completed before defendant proceeded to compel oral copulation. Viewing the evidence most favorably to the prosecution, it is plausible that defendant did not form the intent and objective to commit a separate act of forcible oral copulation until after defendant had kidnapped L. but then became frustrated with her response to his overtures. "Even where the defendant has but one objective—sexual gratification—section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006.)

12

V

DISPOSITION

The court did not err in sentencing defendant based on his admissions or in its application of the Three Strikes law or section 654.

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.

13